Blythe v. Bell, 2013 NCBC 18.

STATE OF NORTH CAROLINA

COUNTY OF CATAWBA

IN THE GENERAL COURT OF JUSTICE
SUPERIOR COURT DIVISION
11 CVS 933

WILLIAM A. B. BLYTHE (individually
and in his capacity as shareholder) and
DRYMAX SPORTS, LLC,

        Plaintiffs,

        v.

ROBERT E. BELL III, VIRGINIA
BELL, NISSAN JOSEPH and
HICKORY BRANDS, INC.,

        Defendants.

)
)
)
)
)
)
)
)
)
)
)
)
)
)
)

**ORDER ON SUPPLEMENTAL
MOTIONS**

{1}     THIS MATTER is before the court on a series of motions referred to collectively as "Supplemental Motions," which relate to the court's earlier Orders on December 10, 2012 and February 4, 2013 rulings on cross-motions for summary judgment.  The Supplemental Motions include Plaintiffs' Motion for Leave to Supplement or, in the Alternative, to Amend Plaintiffs' Complaint ("Motion to Amend"), Plaintiffs' Motion for Clarification and Reconsideration ("Motion for Reconsideration"), Defendants' Motion to Bifurcate Trial ("Motion to Bifurcate"), and Defendants' Supplemental Dispositive Motion ("Dispositive Motion").

> *Moore & Van Allen, PLLC by James P. McLoughlin, Jr., Mark A. Nebrig, Benjamin P. Fryer, Frank E. Schall, and Christopher D. Tomlinson for Plaintiffs William A. B. Blythe and Drymax Sports, LLC.*
>
> *Ellis & Winters, LLP by Andrew S. Chamberlin, C. Scott Meyers, and Christopher W. Jackson, and Young, Morphis, Bach & Taylor, LLP by Paul E. Culpepper and Kevin C. McIntosh for Defendants Robert E. Bell III, Virginia Bell, Nissan Joseph, and Hickory Brands, Inc.*

Gale, Judge.

{2}    The detailed facts and procedural history of the case are detailed in the court's earlier Orders.  At the court's February 5, 2013 status conference, the court modified its Case Management Order to allow additional motions following the court's ruling on the cross-summary judgment motions.  The Parties filed multiple briefs on the Supplemental Motions, the court heard oral argument, and the Motions are ripe for adjudication.  In the interest of providing a more prompt ruling to facilitate preparation for the pre-trial conference set for April 18, 2013 and trial set for May 6, 2013, the court issues this Order recognizing that some of the significant issues would justify a more extensive discussion in the absence of those exigencies, particularly as related to the issues of fiduciary duties owed by the LLC members and the background of and scope of relief afforded for the *Meiselman* claims.

## I.    PLAINTIFFS' MOTION TO AMEND

{3}    Plaintiffs Motion to Amend includes several related but different requests.  Plaintiffs seek: (1) pursuant to subsection (d) of N.C. R. Civ. P. 15 ("Rule 15") to "clarify" that the Third Cause of Action in the Amended Complaint expressly denominated as the Third Cause of Action brought by William A.B. Blythe ("Blythe") individually is, in fact, also a claim of constructive fraud by Drymax Sports, LLC ("Drymax") against Robert E. Bell III ("Robert Bell") despite that there are other causes of action expressly denominated as such joint claims; (2) to further modify that Third Cause of Action by adding additional factual allegations to support the claim that Mr. Bell misused his *de facto* control; (3) alternatively, pursuant to Rule 15(a) to file the Second Amended Complaint expressly to state a claim by Drymax against Robert Bell for constructive fraud; (4) to modify allegations of the Amended Complaint to conform to Plaintiffs having abandoned claims that the Drymax Operating Agreement was adopted and should be enforced as such; (5) to supplement various claims with various factual allegations Plaintiffs indicate have occurred since the litigation was initiated, even though several of

these facts predate the Amended Complaint; and (6) to modify the prayer for relief to include an express request for dissolution in connection with *Meiselman* claims and to request that Blythe receive a capital credit for expenses he has incurred on behalf of Drymax.

{4}     Amendments under Rule 15 are to be decided in the court's discretion, although that discretion is not unlimited and should be reasonably exercised with due regard to fairness to the parties in light of the circumstances and timing of the proposed amendment.  An absence of demonstrable prejudice caused by an amendment may militate in favor of allowing the amendment, but other factors may disfavor particularly a late amendment, and especially so where the amendment is offered to avoid the court's ruling on post-discovery motions for summary judgment. *Compare Draughon v. Harnett Cnty. Bd. of Educ.*, 166 N.C. App. 449, 602 S.E.2d 717 (2004) (supplemental pleadings should be granted absent substantial injustice), *and Williams v. Craft Dev., LLC*, 199 N.C. App. 500, 682 S.Ed.2d 719 (2009) (denying motion to amend after hearing on the cross-motions for summary judgment).

{5}     The court has carefully analyzed both the Amended Complaint and the proposed Second Amendment in light of these principles so that the exercise of its discretion would be sound and fully considered.  To do so, it has revisited the extensive overall record, including substantial motion practice both before and after the case was assigned to the undersigned, weighed the competing arguments as to fairness and the effect of the proposed amendment on trial, balanced Plaintiffs' fair opportunity for trial against Defendants' potential prejudice, including the loss of benefit of the extensive briefing and motion practice to date, considered the impact and necessity, if any, of allowing the amendment in order to provide for admissibility of  evidence developed during discovery based on the Amended Complaint, and fully considered the particular briefs and oral argument in regard to the Motion to Amend.  Having done so, the court's considered judgment is that in the sound exercise of the court's discretion, the Motion to Amend should be DENIED.

{6}     Without being exhaustive as to all the factors the court took into consideration in this exercise of its discretion, the court highlights certain factors it believed to be particularly significant.  First, the court believes that the proposed Second Amendment cannot be fairly characterized as merely a technical amendment, it is much more substantive than that; it is clearly intended to avoid the import of the court's prior rulings on the pleadings which had been closed, and it seeks to avoid any consideration of the fact that Blythe attacks Robert Bell's misuse of control while no longer standing on allegations that Blythe himself had effective control over Drymax.  Second, the Amended Complaint already includes allegations adequate for Blythe to fully pursue claims on Drymax's behalf because of alleged misuse of control by Robert Bell or interests he allegedly controls.  Third, the court had carefully studied the various causes of action in the Amended Complaint when preparing its earlier orders on the cross-motions for summary judgment and had concluded that the Third Cause of Action for constructive fraud had been intentionally stated as an individual claim by Blythe alone, and there is nothing in the Second Amendment which now persuades the court otherwise.  While the Amended Complaint admittedly lodged complaints on behalf of Drymax, the court does not believe it would now be appropriate or fair to allow amendments to expressly state a cause of action which easily could have been, but was not expressly stated as a claim for constructive fraud by Drymax in the earlier Amended Complaint.  Fourth, the proposed Second Amended Complaint seeks to do much more than relabel the Third Cause of Action as being brought jointly by Blythe and Drymax.  It seeks to reorder multiple paragraphs of the Amended Complaint as well as to add additional allegations intended to force the court to modify its prior ruling on the statute of limitations.  Fifth, the overall timing of the proposed amendment must be considered in light of Plaintiffs' own earlier insistence that the pleadings be closed and the case proceed to trial as early as possible.

{7}     In addition to those factors that militate against the amendment, the court has carefully considered the potential prejudice to Plaintiffs by denying the

amendment and concluding that there is no prejudice which outweighs those factors. In particular, the court carefully considered whether allowing the Second Amendment is necessary to afford Plaintiffs fair opportunity to introduce evidence developed during discovery. This is not a case where discovery has revealed a new cause of action. Rather, Plaintiffs seek to include in the pleadings themselves post-filing evidentiary factors which they contend prove the causes of action that are already included in the pleadings. In fact, the court has already considered many, if not all, of these allegations when earlier ruling on the cross-motions for summary judgment.

{8} As to the request to amend the prayer for relief, the court concludes that it can appropriately fashion relief should Plaintiffs succeed without the need for the amendment. The court believes that the new express request for dissolution reflects the court's earlier observation that it believes *Meiselman* remedies may, in fact, depend upon the court's determination that dissolution may be necessary to unlock a minority owner's protectable expectations. The court concludes that the extensive references to Blythe's *Meiselman* expectations throughout the Amended Complaint are already adequate to support the court's consideration of dissolution should Blythe persuade the fact finder of his *Meiselman* rights. The court believes it may also, as necessary, take into consideration Blythe's expenditures on Drymax's behalf should those facts prove relevant in any of the equitable considerations the court must take into account.

{9} In sum, in the court's discretion, the Motion to Amend is DENIED.

## II. PLAINTIFFS' MOTION FOR RECONSIDERATION

{10} Plaintiffs' Motion for Reconsideration asks the court to withdraw several of the determinations of its February 4, 2013 Order, claiming that the court has erred in its legal conclusions in three areas. First, Plaintiffs ask to withdraw its determination that Blythe may not individually pursue a breach of fiduciary duty claim against Robert Bell. The court denies Plaintiffs' request but elaborates below

on the basis for its determination.  Second, Plaintiffs ask the court to reverse its determination that Plaintiffs cannot proceed under N.C. Gen. Stat. § 75-1.1.  The court refuses that request, and amplifies that in addition to the reasons stated in its February 4, 2013 Order, to the extent that Plaintiffs seek to rely on statements made by Hickory Brand, Inc. ("HBI") to the general public, Plaintiffs have not demonstrated that these statements have proximately caused damage to them, and that Plaintiffs' effort to recast their causes of action as claims for injury to competition is late and unavailing.  Third, Plaintiffs request that the court withdraw its determination that claims which seek to enforce the Operational Agreement are not governed by the continuing wrong theory.  The court refuses that request without further comment or discussion.

{11}   The court now turns to its determination that Blythe cannot proceed individually on a claim for breach of fiduciary duties.  Initially, the court addresses two sentences from its earlier ruling highlighted in the Motion for Reconsideration.

{12}   First, Plaintiffs suggest that the court did not properly analyze Blythe's individual claims because in paragraph 48 of its February 4, 2013 Order, the court stated that, "[t]he court's December 10, 2012 Order determined that no Drymax member has ever had majority control."  More correctly, the court should have noted that, "the court's December 10, 2012 Order determined that no Drymax member has ever owned a majority interest."  The court's determination that Blythe may not proceed on an individual fiduciary duty claim does not depend upon a finding that Robert Bell neither owned nor controlled a majority percentage.  It is evident from reading the remaining portions of the court's February 4, 2013 Order, including but not limited to paragraph 48, that the court recognized and well considered Blythe's assertions that Robert Bell owed Blythe individually a fiduciary duty, either because he had *de facto* control and therefore owed the duties of a majority owner, or because Blythe has reposed such trust and confidence in Robert Bell so as to cede him dominion and control leading to fiduciary obligations.

{13}   Second, Plaintiffs suggest that the court improperly concluded that Robert Bell did not have dominion and control adequate to create a particular

fiduciary duty because of control that Blythe continued to have over Drymax-related trademarks. In particular, Plaintiffs highlight the court's statement in paragraph 49 of its February 4, 2013 Order that "Blythe also admits that he holds the power to terminate the use of the Trademarks . . . ." Importantly, this sentence was in the context of the court's consideration whether Blythe had developed a factual record adequate to support his claim that a fiduciary duty was owed to him because he had imposed trust and confidence to a degree necessary to support such a duty. In that regard, both the objective facts and Blythe's subjective beliefs are relevant in considering whether Defendants, in fact, "held all the cards" and Blythe believed that he had ceded dominion and control to them.

{14} The record includes substantial evidence that Blythe believed he retained certain control despite having earlier assigned trademarks to Drymax. For example, in Exhibit 131, an e-mail from Blythe to Defendant Nissan Joseph ("Joseph") dated January 27, 2007, Blythe expressed his view that if the Defendants did not wish to proceed with Drymax as he envisioned the company, "tell me now and I will take back my technology and brand name and do it on my own." Blythe reiterated this frustration and his thought that he would take back intellectual property that he had contributed in paragraph 29 of his October 12, 2012 affidavit. And, in his deposition, he admitted that the License and Supply Agreement was still in force in 2007, a point at which presumably Blythe could have taken action to terminate that Agreement. (Blythe Dep. 214:21–217:23). The record is also clear that neither Blythe nor Drymax actually controls the technology itself, but only the Drymax-related trademarks.

{15} Having noted these potential corrections or clarifications of its prior Order, the court affirms its view that Blythe is not entitled individually to proceed on a breach of fiduciary duty claim and amplifies the reasoning which leads to this conclusion. Again, it does so in a more abbreviated fashion than it would if writing without concern for the need for a more immediate ruling. The court also notes that the issues are addressed in the Motion for Reconsideration in a more thorough

manner than they were in Plaintiffs' very extensive briefs on the cross-motions for summary judgment.

{16}   Blythe relies heavily on court decisions which afford a minority owner of a closely-held corporation an individual right to assert claims which can generally only be maintained by corporations, not shareholders, when there is a market for shares.  Likewise, it is now appropriate for the court to consider whether claims arising in the context of a closely-held corporation should receive some different focus or inquiry in the context of a limited liability company, particularly where the claims depend so heavily on arguments as to what contractual understandings the LLC members formed when the LLC was formed.  In fact, here Blythe first claimed that the Drymax Operating Agreement he initially sought to enforce provided him not only protection as a minority owner but had vested him with effective majority control.

{17}   The North Carolina Court of Appeals has recognized that, in certain instances, a group of owners of a closely-held corporation may be considered a majority even though neither alone owned a majority interest, and that when their power of control is abused in those instances, a minority shareholder may need to be allowed to pursue claims individually despite the general rule that claims for harm to the corporation must be brought derivatively.  The court does not believe, however, that the Court of Appeals has determined that the general rule favoring derivative actions must be abandoned in all instances so that a minority owner always has a right to proceed individually to assert breach of fiduciary claims for injury to the corporation where the other owners take action as a majority which disagrees with the minority owner's view as to what best serves the corporation's interest.  And, even if there were such a rigid rule, which again the court believes there is not, the rule should not necessarily be implemented in the context of a LLC, in no small part because of the freedom of contract granted to LLC members to obtain minority protections not available to shareholders of the closely-held corporation and because the procedural hurdles which might defeat a derivative

claim on behalf of a closely-held corporation might not defeat a derivative claim on behalf of the LLC.

{18} Rather than itself recounting the line of cases to which the court refers, the court references Judge Horton's thorough summary in his opinion in *Norman v. Nash Johnson & Sons' Farms, Inc.*, 140 N.C. App. 390, 537 S.E.2d 248 (2000). But the court cautions that *Norman* and each of the line of cases it discusses should be considered in light of their particular facts. It is also particularly significant to understand the legal factors which led *Norman* and its predecessors to relax but not abandon the well-settled general principle that a corporate shareholder may not bring an individual action for rights accruing to the corporation unless the alleged wrongdoer owed the shareholder a special duty or the shareholder suffered an injury separate and distinct from the corporation as stated by the North Carolina Supreme Court in *Barger v. McCoy Hillard & Parks*, 346 N.C. 650, 488 S.E.2d 215 (1997) and other cases. *See* Russell M. Robinson, II, *Robinson on North Carolina Corporation Law* § 17-2 (2012). In those cases, the Court of Appeals recognized that applying the general rule would actually disserve the corporation's interest which the general rule seeks to protect, and defeating the minority's right in light of the peculiar and egregious facts of those cases would champion corporate form over injury to the corporation. *See* 140 N.C. App. at 404, 537 S.E.2d at 258.

{19} Read consistently with the *Barger* line of cases, the *Norman* line of cases may be understood to find on their particular facts a "special duty" owed to the minority shareholder, thus satisfying the *Barger* rule. It is also noteworthy that *Norman* and other cases which it followed arose in the context of a Rule 12(b)(6) motion. *Id.* at 401–04, 537 S.E.2d at 257–58.

{20} *Norman* also placed some significance on the procedural hurdles attendant to a derivative corporate action, and particularly the inflexible requirement of a pre-litigation demand. *Id.* at 405, 537 S.E.2d at 258. Here, the same considerations do not necessarily prevail when considering a derivative action on behalf of the LLC. A LLC member does not face the same inflexible pre-litigation demand requirements attendant to a derivative suit brought on behalf of a

closely-held corporation. Pursuant to N.C. Gen. Stat. § 57C-8-01(a), a derivative action on behalf of a LLC is appropriate if: (i) the plaintiff does not have authority to cause the LLC to sue in its own right, (ii) the plaintiff was a member of the LLC at the time the action was brought and at other material times; and (iii) the member-plaintiff alleges with particularity the efforts made to obtain the desired action from those with authority over actions of the LLC. *Crouse v. Mineo*, 189 N.C. App. 232, 244–245, 658 S.E.2d 33, 39 (2008); *Mooring Capital Fund, LLC v. Comstock N.C., LLC*, 2009 NCBC LEXIS 32 (N.C. Super. Ct. November 13, 2009). There is no explicit language that a LLC member must make a written demand on the LLC before filing the derivative action. *See generally*, *Robinson, supra*, § 34.04(5) n. 86. A court may employ a liberal standard to find a derivative action on behalf of a LLC has been stated even though the plaintiff made no effort to label it as such. *Crouse*, 189 N.C. App. at 244–45, 658 S.E.2d at 40; *Peak Coastal Ventures, LLP v. Sun Trust Bank*, 2011 NCBC LEXIS 13 (N.C. Super. Ct. May 5, 2011).

{21} There are other differences in the statutory requirements for a derivative action as between a corporation and a LLC. The North Carolina Business Corporation Act § 55-7-41 requires that the derivative plaintiff must be able to demonstrate that she fairly represents the interests of the corporation. Defendants sought to impose this standard when they challenged Blythe's standing to bring a derivative action on Drymax's behalf. The court rejected Defendants' argument, noting in part, that the North Carolina LLC Act did not incorporate those provisions from the Business Corporation Act.

{22} The court also believes that the claims in this case are also factually distinct from those before the North Carolina Court of Appeals in the cases on which Blythe relies. Here, the court believes that the derivative claims provide an effective vehicle for redressing the wrongs of which Blythe seeks to complain individually, and that the ability to litigate those claims will not be lost or compromised by having them litigated as derivative claims. Blythe is still free to pursue his *Meiselman* claims individually, but the primary wrongs complained of as to injury to Drymax corporately can be adequately addressed through the derivative

claim. Blythe has asserted a basis on which he claims that the individual Defendants owe a fiduciary duty to Drymax irrespective of whether Blythe succeeds in proving that Robert Bell individually had *de facto* control.[1]

{23} In sum, for the foregoing reasons, the court continues to conclude that Blythe cannot proceed individually on a breach of fiduciary duty claim and the Motion for Reconsideration is DENIED.

## III. DEFENDANTS' MOTION TO BIFURCATE

{24} Defendants' Motion to Bifurcate asks that trial of certain issues related to the statute of limitations be bifurcated pursuant to N.C. R. Civ. P. 42(b)(1) and that issues related to punitive damages be bifurcated pursuant to N.C. Gen. Stat. 1D-30. The Plaintiffs and the court agree that Defendants have the statutory right to bifurcate issues related to punitive damages, and to that extent the Motion to Bifurcate is GRANTED. However, as to other issues, in the court's discretion, the Motion to Bifurcate is DENIED.

---

[1] The evidentiary record suggests that the asserted duties may arise because of Defendants' various roles as members, managers, or directors. The term "fiduciary" does not expressly appear in the North Carolina Limited Liability Company Act, but, N.C. Gen. Stat. § 57C-3-22 imposes obligations of good faith and prudence on LLC managers and generally managers, and officers or directors of LLCs are thought to have fiduciary duties similar to corporate officers and directors. *Robinson, supra*, § 34.04(3). The issue of manager duties is a bit muddled on the present record. Drymax's Articles of Organization, Article V, provided that: "[e]xcept as provided in Section 57C-3-20(a) of the North Carolina General Statutes, the members of the Company shall not be managers by virtue of their status as members." However, the Articles of Organization also did not specify any manager. The members never formally adopted an Operating Agreement denominated as such. Section 57C-3-20(a) provides that during any period where neither the articles of organization nor an operating agreement designates managers, then all members shall be managers. At the initial meeting of "Drymax Sports LLC Shareholders" on January 15, 2004, the members appointed each of the individual members as a Board of Directors who then met as such and designated Blythe as a sole manager but provided that financial and strategic decisions would be made by the Board. The most recent Drymax Annual Report lists Blythe, Robert Bell and Virginia Bell as Member/Managers and HBI as a Member.

## IV. DEFENDANTS' DISPOSITIVE MOTION

{25}    Defendants' Supplemental Dispositive Motion seeks a summary adjudication on issues which Defendants contend were first put in a posture for such ruling by the narrowing of issues by the court's February 4, 2013 Order, and which can now be made on the basis of uncontested facts.  In particular, Defendants request rulings that: (1) Plaintiffs have judicially admitted that the breach of the Operational Agreement, if any, first occurred no later than May 2007 so that claims related to enforcing that agreement are time-barred unless Plaintiffs can prove that Defendants are estopped from relying on a statute of limitations defense; (2) if the Operational Agreement was ever valid and enforceable, it was also terminable at will and has as a matter of law now been terminated; (3) Blythe's *Meiselman* claim does not support the award of money damages; (4) Plaintiffs' quasi-contract claims must be dismissed because the Parties were governed either by the Operational Agreement or the License and Supply Agreement; and (5) claims against Joseph are barred by the statute of limitations.

{26}    Defendants correctly note that Plaintiffs have on several instances contended that the Operational Agreement should have been implemented as to the sale of socks no later than May 2007.  But Plaintiffs have further forecasted evidence adequate to withstand a summary adjudication in that they contend the evidence will further show that the Operational Agreement was, in fact, not ready to be implemented until a later point in time because of Defendants' wrongful conduct.  The court believes that it must further evaluate Defendants' argument after Plaintiffs have been given the opportunity to present their trial evidence.

{27}    As explained during the recent hearing on the Supplemental Motions, the court does not believe it should determine summarily whether the Operational Agreement was terminated even if it were otherwise valid and enforceable.  While Defendants point to evidence that HBI clearly indicated its intent not to implement the Operational Agreement as to the sale of socks, Plaintiffs contend that a termination defense cannot rest on this claim where HBI did so only to

misappropriate benefits of that contract for itself. The court believes that Defendants' termination defense must await resolution at trial in the context of the overall evidentiary record.

{28} As to Defendants' assertion that Blythe's *Meiselman* claim does not support a monetary award, the court has reviewed Plaintiffs' proposed jury issues and jury instructions, and it does not appear that Plaintiffs contend that the jury should be given a damages issues based on Blythe's *Meiselman* claims. As the court explained during oral argument, it believes that the *Meiselman* claim is an individual claim separate and apart from the breach of fiduciary duty claims brought derivatively by Drymax, even though they arise from a similar evidentiary record. The court reserves its final determination of issues that it, rather than the jury, is to decide. But the court continues to believe that the *Meiselman* claim rests on its statutory foundation, that the statute as it is presently worded constrains the court's equitable powers, and that the court does not have the same broad equitable powers granted by N.C. Gen. Stat. § 55-14-30, at the time of the *Meiselman* decision because of a subsequent statutory amendment. *Meiselman v. Meiselman*, 309 N.C. 279, 295, 307 S.E.2d 551, 561 (1983); *High Point Bank & Trust Co. v. Sapona Mfg. Co.*, 2010 NCBC LEXIS 14, at * 15 n.4 (N.C. Super. Ct. June 22, 2010).

{29} As to the quasi-contract claims and claims against Joseph, the court believes that determination of these issues should also await trial.

{30} For these reasons, the Supplemental Motion is DENIED without prejudice to the court's further consideration of the issues to be addressed at trial.

IT IS SO ORDERED, this 8th day of April, 2013.