Bennett v. Bennett, 2019 NCBC 18.

STATE OF NORTH CAROLINA

FORSYTH COUNTY

BERT L. BENNETT III and TERRY
BENNETT ALLEN,

Plaintiffs,

v.

GRAHAM F. BENNETT; ANN
BENNETT-PHILLIPS; JAMES H.
BENNETT; and LOUISE BENNETT,

Defendants,

and

BENNETT LINVILLE FARM, LLC;
JOHN J. BENNETT; and JEANNE R.
BENNETT,

Nominal Defendants.

IN THE GENERAL COURT OF JUSTICE
SUPERIOR COURT DIVISION
18 CVS 48

**ORDER AND OPINION ON
MOTION TO DISMISS SECOND
AMENDED COMPLAINT**

1.     This case arises out of a dispute between siblings, all of whom are members or former members of Bennett Linville Farm, LLC ("Bennett Farm"). Formed as an estate-planning vehicle, Bennett Farm's initial members included most of the Bennett family—both parents and six of their children. The family's intent, according to Plaintiffs, was for each of Bennett Farm's members to have an equal say in its affairs.

2.     Instead, Plaintiffs contend, they have been denied a voice on nearly every company decision in recent years. In this action, they allege that three of the Bennett siblings—Graham Bennett, Ann Bennett-Phillips, and Jim Bennett—conspired to

seize managerial authority without the other members' knowledge or approval. The three then fraudulently amended Bennett Farm's operating agreement to consolidate their control and, having done so, began taking actions on the company's behalf without member approval. Plaintiffs now claim that Graham, Ann, and Jim breached a fiduciary duty owed to the other members, seek declarations that their actions were unauthorized and invalid, and request a decree judicially dissolving Bennett Farm.

3.　In response, Graham, Ann, and Jim seek to dismiss this action in its entirety. They contend that Plaintiffs lack standing to bring many of the asserted claims as direct claims, rather than as derivative claims on behalf of Bennett Farm. They also contend that Plaintiffs fail to state any claim upon which relief can be granted. For the reasons stated below, the Court **GRANTS in part** and **DENIES in part** the motion.

> *Fitzgerald Litigation, by Andrew L. Fitzgerald, Lee Denton, and D. Stuart Punger, for Plaintiffs.*

> *Bell, Davis & Pitt, P.A., by Allison B. Parker and Kevin G. Williams, for Defendants Graham F. Bennett, Ann Bennett-Phillips, James H. Bennett, and Bennett Linville Farm, LLC.*

> *Roberson Haworth & Reese, PLLC, by Andrew D. Irby, for Defendant Louise Bennett.*

> *No counsel appeared for Nominal Defendants John J. Bennett and Jeanne R. Bennett.*

Conrad, Judge.

# I.
# BACKGROUND[1]

4.    The history of this case begins nearly 40 years ago with Bert Bennett, Jr., his wife Lillian Bennett, and their eight children: Bert III, Graham, Joy, John, Louise, Terry, Ann, and Jim.  (Second Am. Compl. ¶ 12, ECF No. 25 ["Compl."].)  In the early 1980s, the Bennett parents began giving real estate to their children.  (Compl. ¶ 14.)  Over the course of several years, each of the Bennett children received a one-eighth undivided interest in several parcels in Avery County—a tract that eventually grew to hundreds of acres.  (Compl. ¶¶ 14, 15.)

5.    Such was the status quo until 2001, when Joy gave up her interest in the property, transferring it to her seven siblings.  (Compl. ¶ 16.)  Around the same time, John and his wife, Jeanne, requested that they be given a portion of the property to own separate and apart from the others.  (Compl. ¶ 17.)  The Bennett parents agreed, and the other Bennett children deeded their interests in a 35-acre tract to John and Jeanne.  (Compl. ¶ 19.)  Although somewhat unclear, it appears that John in return gave up his interest in the rest of the Avery County property.  (*See* Compl. ¶ 20.)

6.    The second amended complaint says little about how the Bennett family managed the jointly held property at first.  The Bennett parents, though having given the property to their children, seem to have exercised continued decision-making authority for a time.  (*See* Compl. ¶¶ 18, 24.)  That changed in 2007 with the creation of Bennett Farm, a limited liability company formed to facilitate the parents' estate

---

[1] This summary is drawn from relevant allegations in the second amended complaint and the attached exhibits.  It is intended only to provide context for the Court's decision and does not constitute findings of fact.

planning. (*See* Compl. ¶ 24.) The founding members of Bennett Farm were the Bennett parents (each with a 23% interest), along with Bert III, Graham, Louise, Terry, Ann, and Jim (each with a 9% interest). (Compl. ¶ 24; *see also* Ex. 2 at Schedule I ["Op. Agr."].) All of the members transferred their ownership interests in the Avery County property to Bennett Farm. (Compl. ¶ 28.)

7. According to Bert III and Terry (the plaintiffs here), the family intended Bennett Farm to be a member-managed LLC. (Compl. ¶ 24.) They allege, though, that Graham and Ann designated Bennett Farm as a manager-managed LLC— without the knowledge of the other members—in certain Articles of Incorporation.[2] (Compl. ¶ 25.) The company's Operating Agreement was then executed in February 2007. (Compl. ¶ 26.) It also states that Bennett Farm "shall be managed by the Managers," a term defined as "those individuals set forth in Schedule II" or individuals "who are elected to act as Managers." (Op. Agr. §§ 2.1, 12.1(p).) As executed, though, the Operating Agreement included no Schedule II, and no election of managers ever took place. (*See* Compl. ¶¶ 26, 27.) Bert III and Terry allege that a document labeled as Schedule II, which lists Graham and Ann as managers, was added later without the approval of Bennett Farm's members. (Compl. ¶ 26.)

8. In 2010, Graham and Ann, joined by Jim, amended the Operating Agreement, again without the others' knowledge, to include new terms designed to consolidate their control. (*See* Compl. ¶ 30.) Among other changes, the Amended Operating Agreement designates Jim as a third manager, authorizes the managers

---

[2] It is unclear why Articles of Incorporation were adopted for Bennett Farm, which is a limited liability company and not a corporation.

to make capital calls without member consent, loosens the restrictions on a member's right to transfer his or her interest, and permits Bennett Farm to redeem any member's interest upon the consent of members owning at least 75% of the company. (*See* Compl. Ex. 4 §§ 7.2, 9.2, 9.6 ["Am. Op. Agr."].)  Bert III and Terry signed the Amended Operating Agreement but allege that they were never provided a copy of the document apart from the signature page, that the terms were never disclosed, and that Graham falsely represented that their signatures were needed for administrative purposes.  (Compl. ¶ 31.)  They saw the new terms for the first time more than five years later.  (*See* Compl. ¶ 33.)

9.      In 2012, Lillian Bennett died.  (Compl. ¶ 34.)  She passed her interest in Bennett Farm to Bert III, Graham, Louise, Terry, Ann, and Jim—the six children with membership interests in the company.  (Compl. ¶ 34.)  Bert Bennett, Jr., though still living, did the same a few months later.  (Compl. ¶ 35.)  Thus, as of June 2012, Bennett Farm had six remaining members, all with equal interests.  (Compl. ¶ 36.)

10.     Not long after, Graham, Ann, and Jim asked John and Jeanne to give Bennett Farm a right of first refusal on their separate 35-acre tract.  (Compl. ¶ 37.)  John and Jeanne agreed.  (Compl. ¶ 38.)  When John later learned that the right of first refusal would interfere with his plan to incorporate his property into an adjacent subdivision, he requested that Bennett Farm terminate the then-unexercised right. (Compl. ¶ 40.)  This prompted a heated family disagreement.  Bert III, Terry, and Louise had received no notice of the right of first refusal in the first place and favored granting John's request to terminate it.  (Compl. ¶¶ 39, 46.)  Graham, Ann, and Jim

disagreed and, claiming managerial authority, decided to exercise and enforce the right of first refusal even in the absence of majority approval of the members. (Compl. ¶¶ 46–48.) John and Jeanne responded by suing Bennett Farm. (Compl. ¶ 50.)

11. The litigation deepened the family divide. The siblings disputed who should pay for Bennett Farm's litigation expenses. (*See* Compl. ¶¶ 61, 78, 90(f).) Bert III's refusal to pay his share of the expenses prompted a backlash by Graham, Ann, and Jim, resulting in his exclusion from the Bennett Farm property. (*See* Compl. ¶¶ 78, 79.)

12. There were also discussions about how to pay for John and Jeanne's land if Bennett Farm succeeded in exercising the right of first refusal. Bert III and Terry now allege that the others used the issue as leverage to force Terry out of the company. In an e-mail to Graham and Ann, Jim expressed his "wish" to "find a way to get Terry to sell out of the entire property now." (Compl. ¶ 52.) Ann agreed and observed that Terry likely would not or could not pay her pro rata share of any cost to buy John and Jeanne's land. (*See* Compl. ¶ 52.) Graham later informed Terry that she would have to make such a contribution—an amount over $100,000—or consider selling her interest in Bennett Farm to the other members. (Compl. ¶ 54.) To satisfy any capital call to buy out John and Jeanne, Terry would have needed access to funds in a trust that had been created by her mother's will. (Compl. ¶ 51.) Ann, one of the two trustees, refused to assure Terry that she would have access to the trust funds. (Compl. ¶ 57.) Unable to afford a capital call, Terry negotiated a sale of her

membership interest in February 2016 to the other five remaining members of Bennett Farm. (Compl. ¶ 58.)

13. As the litigation with John lingered, Bert III commenced this action in January 2018 against Graham, Ann, Jim, and Louise, along with Bennett Farm as a nominal defendant. (ECF No. 4.) His original complaint sought a declaration that Graham, Ann, and Jim are not managers of Bennett Farm and that many of their actions on the company's behalf were invalid. In addition, he brought claims for breach of fiduciary duty, civil conspiracy, constructive fraud, and judicial dissolution of Bennett Farm. The complaint was later amended to add Terry as a plaintiff. (ECF No. 5.) Terry joined in Bert III's original claims and added new allegations that Ann breached her fiduciary duty in her role as trustee for Terry.

14. A motion to dismiss the amended complaint was filed but became moot when Bert III and Terry were granted leave to amend for a second time. (ECF No. 24.) The second amended complaint adds John and Jeanne as nominal defendants. It also adds new claims for breach of contract and breach of the implied covenant of good faith and fair dealing, both relating to Louise's sale of her membership interest in April 2018. (*See* Compl. ¶ 68.) Louise, apparently fed up with family litigiousness, invited offers to purchase her membership interest from all her siblings but ultimately sold it to Graham, Ann, and Jim. (*See* Compl. ¶¶ 63–69.) The transaction gave Graham, Ann, and Jim a combined 80% of Bennett Farm and left Bert III with the remaining 20% interest. (Compl. ¶ 68.) Bert III and Terry allege that the transfer

failed to comply with the terms of the Operating Agreement, or the Amended Operating Agreement if it controls. (*See* Compl. ¶¶ 103–09.)

15. Graham, Ann, and Jim moved to dismiss the second amended complaint in its entirety on July 10, 2018. (ECF No. 32.) The motion has been fully briefed, and the Court held a hearing on August 16, 2018. The motion is ripe for resolution.[3]

II.
ANALYSIS

16. Bert III and Terry allege that three of their siblings—Graham, Ann, and Jim—"have undertaken a crusade" to gain control of Bennett Farm and its property to the exclusion of the other Bennett children. (Pl.'s Br. Opp'n. Mot. Dismiss 6–7, ECF No. 38 ["Opp'n"].) According to Bert III and Terry, all or nearly all of the actions taken by Graham, Ann, and Jim on behalf of Bennett Farm were unauthorized and in violation of fiduciary and contractual duties owed to the other members. Bert III and Terry have brought each of their eight claims for relief as direct claims and not as derivative claims on behalf of Bennett Farm.

17. Graham, Ann, and Jim seek to dismiss the second amended complaint in its entirety. They press a mix of jurisdictional and merits-related arguments. Among other things, Graham, Ann, and Jim contend that they owed no fiduciary duties to Bert III and Terry as either co-members or managers of Bennett Farm and that the

---

[3] Louise filed her own motion to dismiss on July 26, 2018. (ECF No. 36.) In response, Bert III and Terry voluntarily dismissed any demand for monetary relief against Louise, though maintaining that she must remain a party because their claims could affect the transfer of her membership interest in Bennett Farm. (ECF No. 40.) Louise withdrew her motion on August 10, 2018. (ECF No. 41.)

requested declaratory judgments are largely improper efforts to nullify contracts, including the Amended Operating Agreement.

## A. Legal Standard

18.     "Subject matter jurisdiction is a prerequisite for the exercise of judicial authority over any case or controversy." *Intersal, Inc. v. Hamilton*, 2017 NCBC LEXIS 97, at \*16 (N.C. Super. Ct. Oct. 12, 2017).  Matters outside the pleadings may be considered by the Court.  *See State v. Seneca-Cayuga Tobacco Co.*, 197 N.C. App. 176, 177, 676 S.E.2d 579, 583 (2009).  If the Court does not consider matters outside the pleadings, "the court must accept plaintiff's allegations as true and construe them in the light most favorable to the plaintiff." *DiCesare v. Charlotte-Mecklenburg Hosp. Auth.*, 2017 NCBC LEXIS 33, at \*18 (N.C. Super. Ct. Apr. 11, 2017).

19.     A motion to dismiss under North Carolina Rule of Civil Procedure 12(b)(6) "tests the legal sufficiency of the complaint." *Concrete Serv. Corp. v. Inv'rs Grp., Inc.*, 79 N.C. App. 678, 681, 340 S.E.2d 755, 758 (1986).  Dismissal pursuant to Rule 12(b)(6) is appropriate when "(1) the complaint on its face reveals that no law supports the plaintiff's claim; (2) the complaint on its face reveals the absence of facts sufficient to make a good claim; or (3) the complaint discloses some fact that necessarily defeats the plaintiff's claim." *Corwin v. British Am. Tobacco PLC*, 821 S.E.2d 729, 736–37 (N.C. 2018) (citation and quotation marks omitted).

20.     In deciding a Rule 12(b)(6) motion, the Court must treat the well-pleaded allegations of the complaint as true and view the facts and permissible inferences "in the light most favorable to" the nonmoving party. *Ford v. Peaches Entm't Corp.*, 83

N.C. App. 155, 156, 349 S.E.2d 82, 83 (1986). "[T]he court is not required to accept as true any conclusions of law or unwarranted deductions of fact." *Oberlin Capital, L.P. v. Slavin*, 147 N.C. App. 52, 56, 554 S.E.2d 840, 844 (2001). The Court "may properly consider documents which are the subject of a plaintiff's complaint and to which the complaint specifically refers" without converting a Rule 12(b)(6) motion into a motion for summary judgment. *Weaver v. St. Joseph of the Pines, Inc.*, 187 N.C. App. 198, 204, 652 S.E.2d 701, 707 (2007) (quoting *Oberlin Capital*, 147 N.C. App. at 60, 554 S.E.2d at 847).[4]

## B. Fiduciary Claims

21. The Court begins with the claims based on fiduciary relationships. The second amended complaint includes two distinct claims for breach of fiduciary duty: one related to actions taken by Graham, Ann, and Jim on behalf of Bennett Farm; and the other against Ann in her role as trustee for Terry. There is also a single claim for constructive fraud that is premised on the same facts underlying the two fiduciary-duty claims. The Court considers each in turn.

### 1. Breach of Fiduciary Duty Based on Actions by Graham, Ann, and Jim on Behalf of Bennett Farm

22. As alleged in the second amended complaint, Graham, Ann, and Jim breached their fiduciary duties owed to Bert III and Terry by seizing control of Bennett Farm without the authorization of its members and then taking a series of

---

[4] Bert III and Terry object to any consideration of the exhibits to the motion to dismiss and other extrinsic matter introduced in the briefing. (*See* Opp'n 28–29.) These materials are not pertinent to the disputed issues, and the Court therefore has not considered them.

actions designed to consolidate their control. (*See* Compl. ¶¶ 84–96.) Graham, Ann, and Jim contend that Bert III and Terry lack standing to pursue a direct claim for breach of fiduciary duty and that the complaint does not adequately allege the existence of a fiduciary relationship between the parties. (*See* Def.'s Br. in Supp. Mot. Dismiss 7–10 ["Br. in Supp."].)

23. "Standing generally refers to a party's right to have a court decide the merits of a dispute." *DiCesare*, 2017 NCBC LEXIS 33, at *19. It is "a necessary prerequisite to a court's proper exercise of subject matter jurisdiction," *Aubin v. Susi*, 149 N.C. App. 320, 324, 560 S.E.2d 875, 878 (2002), and, therefore, "a threshold issue that must be addressed and found to exist, before the merits of the case are judicially resolved," *Byron v. SYNCO Props.*, 813 S.E.2d 455, 458 (N.C. Ct. App. 2018) (citation and quotation marks omitted).

24. Here, Graham, Ann, and Jim argue that Bert III and Terry lack standing to assert a direct claim for breach of fiduciary duty, relying on the general rule "that shareholders cannot pursue individual causes of action against third parties for wrongs or injuries to the corporation that result in the diminution or destruction of the value of their stock." *Barger v. McCoy Hillard & Parks*, 346 N.C. 650, 658, 488 S.E.2d 215, 219 (1997). The exception to this rule is that a shareholder may maintain an individual action, "even if the corporation also has a cause of action arising from the same wrong, if the shareholder can show that the wrongdoer owed him a special duty or that the injury suffered by the shareholder is separate and distinct from the injury sustained by the other shareholders or the corporation itself." *Id.* at 659, 488

S.E.2d at 219. These rules apply "equally to LLCs" and their members because the members are, for this purpose, functionally equivalent to corporate shareholders. *Levin v. Jacobson*, 2015 NCBC LEXIS 111, at *15 n.4 (N.C. Super. Ct. Dec. 7, 2015).[5]

25.     The alleged breaches of fiduciary duty here are extensive and overlapping. They include allegations that Graham, Ann, and Jim improperly acquired and then exercised managerial authority over Bennett Farm—for example, hiring counsel to amend the Operating Agreement (which they then tricked their siblings into signing), negotiating and exercising the right of first refusal as to John and Jeanne's land, and declaring and making capital calls. (*See* Compl. ¶¶ 88, 90, 92, 93.) The second amended complaint further alleges that Graham, Ann, and Jim improperly induced Terry into selling her membership interest and purchased Louise's membership interest in violation of the Operating Agreement. (*See* Compl. ¶¶ 90, 94.)

26.     In each case, assuming the alleged facts to be true, the injuries incurred by Bert III and Terry are "separate and distinct" from those of Bennett Farm as required under the *Barger* framework. *Barger*, 346 N.C. at 659, 488 S.E.2d at 219. At root, Bert III and Terry allege that Graham, Ann, and Jim seized managerial control without authorization and took actions on behalf of Bennett Farm against the wishes

---

[5] The *Barger* framework seems to be a poor fit here, yet both sides apply it, apparently on the theory that the claim is based on alleged wrongs committed "against [Bennett Farm] and alleged injuries suffered by [Bennett Farm]." (Br. in Supp. 6; *see also* Opp'n 15–18.) There is no claim, though, that Graham, Ann, and Jim breached a fiduciary duty owed to Bennett Farm. And many of the alleged wrongs were clearly directed toward Bennett Farm's members, not Bennett Farm, which would suggest the claim is, at least in part, a direct claim on its face. Nevertheless, application of the *Barger* framework would lead to the same result, and the Court elects to do so. *See Atkinson v. Lackey*, 2015 NCBC LEXIS 21, at *14 n.3 (N.C. Super. Ct. Feb. 27, 2015) (applying *Barger* even though "claims arguably could be seen as direct claims on their face and fall outside the *Barger* analysis altogether").

of the majority of its members. If so, the effect was to deprive dissenting members of their voting rights. This would include at least the right to elect managers, (*see* Op. Agr. § 12.1(p)), and the residual right to vote on business affairs in the absence of validly appointed managers, *see* N.C. Gen. Stat. § 57D-3-20(d) ("All members will be managers for any period during which the LLC would otherwise not have any managers or other company officials."). As this Court recently held, the right to vote on company matters is a right possessed by the individual member, and the infringement of that right is an individual injury properly the subject of a direct claim. *See 759 Ventures, LLC v. GCP Apt. Investors, LLC*, 2018 NCBC LEXIS 82, at *10 (N.C. Super. Ct. Aug. 13, 2018); *see also La Mack v. Obeid*, 2015 NCBC LEXIS 24, at *12–14 (N.C. Super. Ct. Mar. 5, 2015) (applying Delaware law).

27. So too for the other allegations. The loss of Terry's membership interest, if she was wrongfully induced into selling, is an injury unique to Terry. Similarly, the allegedly improper purchase of Louise's membership interest by Graham, Ann, and Jim diluted the interest of Bert III relative to theirs—effectively increasing the interest of the three managerial members at the expense of the remaining minority member. *Cf. Corwin*, 821 S.E.2d at 735–36 (holding that shareholder had standing to bring direct claim for voting power dilution in corporate context).

28. Graham, Ann, and Jim argue, perhaps correctly, that they became managers through legitimate means and therefore properly exercised managerial authority. (*See* Br. in Supp. 3, 19.) They also argue that Terry was not coerced into selling her interest and that the purchase of Louise's interest complied with the

requirements of the Amended Operating Agreement.  (*See* Br. in Supp. 21.)  But the allegations of the second amended complaint say otherwise, and "[j]urisdiction of the court over the subject matter is not defeated by the possibility that the allegations of the complaint may fail to state a cause of action upon which the plaintiff may recover." *Wilkie v. Stanley*, 2011 NCBC LEXIS 11, at *7 (N.C. Super. Ct. Apr. 20, 2011) (quoting *Dale v. Lattimore*, 12 N.C. App. 348, 352, 183 S.E.2d 417, 420 (1971)).  For purposes of standing, Bert III and Terry have alleged a concrete, individual injury, sufficient "to justify the invocation of the judiciary's remedial powers."  *Id.* at *8 (citation and quotation marks omitted).

29.    On the merits, however, the claim falls short.  An "essential element" of a claim for breach of fiduciary duty "is the existence of a fiduciary relationship." *Azure Dolphin, LLC v. Barton*, 2017 NCBC LEXIS 90, at *23 (N.C. Super. Ct. Oct. 2, 2017) (citing *Dalton v. Camp*, 353 N.C. 647, 651, 548 S.E.2d 704, 707 (2001)).  As a general rule, members of an LLC "do not owe a fiduciary duty to each other or to the company." *Kaplan v. O.K. Techs., L.L.C.*, 196 N.C. App. 469, 473, 675 S.E.2d 133, 137 (2009).  Rather, "[t]he rights and duties of LLC members are ordinarily governed by the company's operating agreement, not by general principles of fiduciary relationships." *Strategic Mgmt. Decisions, LLC v. Sales Performance Int'l, LLC*, 2017 NCBC LEXIS 69, at *10–11 (N.C. Super. Ct. Aug. 7, 2017); *see also* N.C. Gen. Stat. § 57D-2-30(a).

30.    Bert III and Terry offer no persuasive reason to depart from these usual rules.  Although Bert III and Terry dispute the validity of the Amended Operating

Agreement, they do not contest the validity of the original Operating Agreement. (*See, e.g.*, Compl. ¶¶ 26, 82.) That agreement thoroughly addresses the duties, powers, and potential liability of members. (*See* Op. Agr. §§ 4.2, 5.6, 6.3, 11.1.) Several provisions expressly disclaim fiduciary or fiduciary-like duties on the part of members or managers. (*See* Op. Agr. §§ 6.2, 11.1.) No provision is alleged to support the existence of a fiduciary relationship between Bennett Farm's members.

31. Rather, Bert III and Terry allege a fiduciary relationship based on other factors, unrelated to the Operating Agreement or the organizational structure of Bennett Farm. They point to their sibling relationship and the allegedly greater business experience and financial resources of Graham, Ann, and Jim. (Compl. ¶¶ 86, 87.) It is debatable whether these factors, even if taken as true, could override the Operating Agreement. "Especially when the members have bargained for comprehensive terms to govern their relationship, the imprudent imposition of fiduciary duties could undermine the contractual nature of an operating agreement." *Strategic Mgmt. Decisions*, 2017 NCBC LEXIS 69, at *11.

32. In any event, the allegations are facially insufficient to plead the existence of a fiduciary relationship. "Only when one party figuratively holds all the cards— all the financial power or technical information, for example—have North Carolina courts found that the special circumstance of a fiduciary relationship has arisen." *Highland Paving Co. v. First Bank*, 227 N.C. App. 36, 42, 742 S.E.2d 287, 292 (2013) (citation and quotation marks omitted). Here, no individual sibling held all the cards. Each member affirmatively represented that he or she possessed "such expertise,

knowledge, and sophistication in financial and business matters generally, and in the type of transactions in which [Bennett Farm] proposes to engage in particular," to be able to evaluate the merits and risks of membership in the company. (Op. Agr. § 11.2.)

33. Furthermore, the other allegations in the second amended complaint refute the existence of a relationship of confidence or trust. Bert III and Terry deny ever having given managerial authority to their siblings. (*See* Compl. ¶¶ 26, 27, 82(b).) In addition, they repeatedly voted against the actions taken by Graham, Ann, and Jim that form the basis of this lawsuit. (*See* Compl. ¶¶ 46, 47, 48.) They also refused to satisfy capital calls. (*See* Compl. ¶ 78.) Simply put, even taking the allegations of the second amended complaint as true, this is not the rare familial relationship that gives rise to a fiduciary relationship. *See White v. Hyde*, 2016 NCBC LEXIS 74, at *21 (N.C. Super. Ct. Oct. 4, 2016) (rejecting fiduciary relationship between sibling co-owners of LLC).

34. In their briefing, Bert III and Terry make two additional, and much narrower, arguments.[6] First, they contend that Graham, Ann, and Jim collectively own more than 50% of Bennett Farm and therefore owe a fiduciary duty as controlling members. (*See* Opp'n 16.) This duty, if it existed, would have applied only after Terry sold her membership interest in February 2016. (*See* Comp. ¶¶ 57, 58.)

---

[6] The second amended complaint also makes reference to a family ledger, which apparently records distributions from the Bennett parents to their children. (*See* Compl. ¶ 72.) The Bennett parents delegated responsibility for maintaining the ledger to Graham at some point. (*See* Compl. ¶ 74.) Bert III and Terry suggest this is another factor supporting the existence of a fiduciary duty but give no reasoned explanation for why that would be so, and the Court cannot discern one. No claim appears to arise out of mismanagement of the ledger.

35. Some recent cases have stated that "a holder of a majority interest who exercises control over the LLC owes a fiduciary duty to minority interest members." *Fiske v. Kieffer*, 2016 NCBC LEXIS 22, at *9 (N.C. Super. Ct. Mar. 9, 2016). "The scope of this exception, borrowed from precedents governing corporations, remains unsettled," and "[t]his Court has cautioned against a broad application because of the fundamental differences between LLCs and corporations." *Strategic Mgmt. Decisions*, 2017 NCBC LEXIS 68, at *11. In the corporate context, for example, courts have held that a controlling shareholder may include "a group of shareholders with an aggregated majority interest acting in concert." *Brewster v. Powell Bail Bonding, Inc.*, 2018 NCBC LEXIS 76, at *10 (N.C. Super. Ct. July 26, 2018). But this Court has routinely refused to extend these precedents to LLCs because minority members have much greater ability to negotiate for protections in the operating agreement. *See, e.g.*, *HCW Ret. & Fin. Servs., LLC v. HCW Employee Benefit Servs., LLC*, 2018 NCBC LEXIS 73, at *47 n.102 (N.C. Super. Ct. July 14, 2015); *Fiske*, 2016 NCBC LEXIS 22, at *10; *Blythe v. Bell*, 2013 NCBC 18, at *13–14 (N.C. Super. Ct. Apr. 8, 2013).

36. The Court adheres to these decisions, which Bert III and Terry do not address or distinguish. As alleged, Bennett Farm does not have and has never had a single majority member. (*See* Compl. ¶¶ 24, 36, 68.) The allegation that Graham, Ann, and Jim collectively own a majority interest does not give rise to a fiduciary duty to minority members.

37. Second, Terry argues that Graham, Ann, and Jim owed her a fiduciary duty of disclosure when purchasing her interest. (Compl. ¶¶ 51–58, 88.) The briefing does little to explain this position, which apparently would apply only to Terry and only to the purchase of her interest. Terry cites no law supporting the proposition that an LLC member owes a fiduciary duty when negotiating a contract to purchase another's interest. Rather, Terry relies on another precedent from the law governing corporations related to a director's purchase of shares from a shareholder. *See Lazenby v. Godwin*, 40 N.C. App. 487, 492, 253 S.E.2d 489, 491 (1979). To the extent Terry intends to suggest that a manager of an LLC (akin to a corporate director) owes a similar duty to a member (akin to a shareholder), the claim is contradicted by her denial that Graham, Ann, and Jim are, in fact, the managers of Bennett Farm.

38. At bottom, the members of Bennett Farm decided to organize their relationship through an LLC. Their rights and duties, as members, are and should be governed by the Operating Agreement, not general principles of fiduciary relationships. Bert III and Terry have not pleaded facts sufficient to show the existence of such a relationship between them, on the one hand, and Graham, Ann, and Jim, on the other.[7]

39. Accordingly, the Court grants the motion to dismiss the claim for breach of fiduciary duty as to the actions of Graham, Ann, and Jim on behalf of Bennett Farm. The Court need not and does not address alternative arguments made in support of the motion.

---

[7] This excludes Ann's role as trustee for Terry, which is the subject of a separate claim and addressed below.

## 2. Breach of Fiduciary Duty Based on Ann's Actions as Trustee

40. The second claim for breach of fiduciary duty relates to Ann's role as trustee for Terry. There is no dispute that Ann, as trustee, owes a fiduciary duty to Terry, as beneficiary of the trust. *See Wachovia Bank & Tr. Co. v. Johnston*, 269 N.C. 701, 711, 153 S.E.2d 449, 457 (1967) (observing "that one of the most fundamental duties of the trustee throughout the trust relationship is to maintain complete loyalty to the interests of" the beneficiary).

41. Ann argues that the claim should be dismissed for two other reasons. She argues, first, that Terry failed to join all necessary parties because Ann's co-trustee was not named as a party. (*See* Br. in Supp. 22–23.) She also argues that the second amended complaint fails to allege a breach of her duty or any injury resulting from it. (*See* Br. in Supp. 23.) Neither argument is persuasive.

42. Whether a trustee is a necessary party depends on the nature of the asserted claims. *See, e.g.*, *Wash. Mut. Bank v. Hargrove*, 2007 N.C. App. LEXIS 12, at *7 (2007) (unpublished) (concluding that trustee was not a necessary party); *Tart v. Byrne*, 243 N.C. 409, 411, 90 S.E.2d 692, 694 (1956) (concluding that trustee was a necessary party as to some but not all claims). Ann points to the general rule that all trustees (and all beneficiaries) are necessary parties "in suits, respecting the trust property, brought either by or against the trustees." *Dunn v. Cook*, 204 N.C. App. 332, 337, 693 S.E.2d 752, 756 (2010) (citation and quotation marks omitted). It is a rule that stems from the broader requirement that "all parties claiming an interest in contested assets must be a party to a suit affecting those assets." *Window World of St. Louis,*

*Inc. v. Window World, Inc.*, 2015 NCBC LEXIS 79, at *24 (N.C. Super. Ct. Aug. 10, 2015).

43. Neither the rule nor its underlying rationale applies here. As alleged, Terry's claim does not create a dispute over the property in her trust. It is instead a claim for money damages against Ann based on Ann's actions as trustee. *See In re Jacobs*, 91 N.C. App. 138, 145, 370 S.E.2d 860, 865 (1988) ("General common law principles hold that a trustee's breach of trust subjects him to personal liability."). This claim can be decided without affecting the trust property or infringing the property rights possessed by the trustees or beneficiary. It was therefore not necessary to name Ann's co-trustee as a party.

44. Terry's allegations are also sufficient to state a claim for relief. Taken as true, the second amended complaint shows that Ann joined with Graham and Jim in an effort "to get Terry to sell out of the entire property now." (Compl. ¶ 52.) Ann proposed telling Terry that she would need to "pony up" a sum of money, apparently to permit Bennett Farm to buy John and Jeanne's property, in the hopes that Terry would instead sell her membership interest. (Compl. ¶ 52.) Graham did just that by presenting Terry with the prospect of contributing her share in a capital call or taking a sizeable loan. (Compl. ¶ 56.) Ann then refused to make trust assets available to Terry to meet a capital call, prompting Terry to sell her membership interest as planned. (Compl. ¶ 57.) Construed liberally, these allegations are sufficient to allege that Ann did not act in Terry's interests but instead used her status as trustee as leverage in Bennett Farm's internal feud, all to Terry's detriment.

45.     Accordingly, the Court denies the motion to dismiss Terry's claim for breach of fiduciary duty against Ann in her role as trustee.

3. Constructive Fraud

46.     The claim for constructive fraud is premised on the same facts that underlie the two fiduciary-duty claims. (*See* Compl. ¶¶ 115–19.) The dismissal of the first claim for breach of fiduciary duty—the Bennett Farm-centered claim—also requires dismissal of the claim for constructive fraud to the extent it is based on the same facts. Bert III and Terry have standing to bring the claim individually, for the reasons explained above. But they have not sufficiently alleged the existence of a fiduciary relationship, which is a necessary element for constructive fraud just as it is for breach of fiduciary duty. *See White v. Consol. Planning, Inc.*, 166 N.C. App. 283, 293, 603 S.E.2d 147, 155 (2004); *see also Brown v. Secor*, 2017 NCBC LEXIS 65, at \*18 (N.C. Super. Ct. July 28, 2017).

47.     Terry's claim against Ann in her role as trustee, on the other hand, may proceed. As noted, Ann does not challenge the existence of a fiduciary relationship. (*See* Br. in Supp. 23.) Constructive fraud also requires a showing that the defendant took advantage of the fiduciary relationship "to benefit himself" or herself. *White*, 166 N.C. App. at 294, 603 S.E.2d at 156. Although Graham, Ann, and Jim's brief argues that this element is absent as it relates to their actions on behalf of Bennett Farm, they do not make the same argument about Ann's alleged actions as trustee. (*See* Br. in Supp. 17–18.) Accordingly, the Court finds no persuasive basis to dismiss Terry's claim against Ann for constructive fraud.

48.     The Court therefore grants the motion to dismiss the claim for constructive fraud against Graham and Jim but denies the motion as to the claim against Ann to the extent it is based on her role as Terry's trustee.

## C.  Contract Claims

49.     Bert III and Terry allege that the transfer of Louise's interest in Bennett Farm to Graham, Ann, and Jim was improper under sections 9.1 and 9.2 of the Operating Agreement or, alternatively, the same sections of the Amended Operating Agreement.  (*See* Compl. ¶ 104.)  They assert claims for breach of contract and breach of the implied covenant of good faith and fair dealing.  The parties' briefs treat the two claims as one, and the Court therefore does as well.

50.     To state a claim for breach of contract, a party must allege that there is a valid contract and that a term of the contract was breached.  *See Poor v. Hill*, 138 N.C. App. 19, 26, 530 S.E.2d 838, 843 (2000).  In every contract, including LLC operating agreements, there is an implied covenant "that neither party will do anything which injures the right of the other to receive the benefits of the agreement." *Pro-Tech Energy Solutions, LLC v. Cooper*, 2015 NCBC LEXIS 76, at *21 (N.C. Super. Ct. July 30, 2015) (quoting *Bicycle Transit Auth., Inc. v. Bell*, 314 N.C. 219, 228, 333 S.E.2d 299, 305 (1985)).

51.     According to Graham, Ann, and Jim, the Amended Operating Agreement is a valid contract, but the second amended complaint does not adequately allege that it was breached.  They contend that section 9.2, by its terms, permitted Louise to sell

her membership interest to some of her siblings without first offering it to all. (*See* Br. in Supp. 21.)

52.    As Bert III and Terry correctly note, though, section 9.2 of the Amended Operating Agreement permits transfers by one sibling to another "for estate and gift tax planning purposes." (Am. Op. Agr. § 9.2.) Transfers to family members for other purposes (or to non-family members for any reason) are permitted only if a number of conditions are satisfied, including first offering the interest to Bennett Farm. (*See* Am. Op. Agr. § 9.2(a)–(d).) The second amended complaint alleges that Louise admitted to selling "her interest primarily to get away from family disharmony and avoid paying legal fees," not to plan for any estate or gift tax considerations. (Compl. ¶ 69.) At the Rule 12 stage, this allegation is sufficient to plead that the transfer was improper and, therefore, a breach of section 9.2.

53.    The original Operating Agreement is structured differently. It has no provision permitting transfers to siblings for estate or gift tax purposes. For any proposed transfer, a member must offer his or her interest first to Bennett Farm. (*See* Op. Agr. § 9.2(a)–(d).) Thus, in the event the original Operating Agreement remains operative, as Bert III and Terry contend, the allegations relating to Louise's transfer of her membership would also state a claim for its breach.

54.    The Court therefore denies the motion to dismiss the claims for breach of contract and the implied covenant of good faith and fair dealing.

D. <u>Conspiracy</u>

55.    There is no "separate civil action for civil conspiracy in North Carolina." *Dove v. Harvey*, 168 N.C. App. 687, 690, 608 S.E.2d 798, 800 (2005). Rather, "[t]he action is for damages caused by acts committed pursuant to a formed conspiracy, rather than by the conspiracy itself." *Reid v. Holden*, 242 N.C. 408, 414–15, 88 S.E.2d 125, 130 (1955). Thus, a claim for civil conspiracy requires "(1) an agreement between two or more individuals; (2) to do an unlawful act or to do a lawful act in an unlawful way; (3) resulting in injury to the plaintiff inflicted by one or more of the conspirators; and (4) pursuant to a common scheme." *Lendingtree, LLC v. Intercontinental Capital Grp.*, 2017 NCBC LEXIS 54, at *14–15 (N.C. Super. Ct. June 23, 2017) (quoting *Piraino Bros., LLC v. Atl. Fin. Grp., Inc.*, 211 N.C. App. 343, 350, 712 S.E.2d 328, 333 (2011)).

56.    Bert III and Terry base their conspiracy claim on the wrongful acts underlying the claims for breach of fiduciary duty and breach of contract. The second amended complaint alleges, for example, that Graham, Ann, and Terry conspired to take control of Bennett Farm, to exercise that control without the other members' consent, to deprive Terry of access to her trust funds, and to acquire Louise's membership interest for themselves. (*See* Compl. ¶¶ 111(d), 111(g), 112.)

57.    Graham, Ann, and Jim argue that the conspiracy claim must be dismissed if the underlying claims are dismissed. (*See* Br. in Supp. 18–19.) As to the Bennett Farm-centered claim for breach of fiduciary duty, the Court agrees. Having dismissed that underlying claim, the Court also dismisses the conspiracy claim to the extent

based on the same acts.  *See Azure Dolphin*, 2017 NCBC LEXIS 90, at \*28–29 (dismissing conspiracy claim).  The allegations specific to Ann's actions in her role as trustee and to the purchase of Louise's membership interest, however, are sufficient to plead an unlawful act for purposes of the conspiracy claim.[8]  *See Brewster*, 2018 NCBC LEXIS 76, at \*15 (denying motion to dismiss conspiracy claim when underlying claim survived).

58.    Graham, Ann, and Jim also argue that "Plaintiffs have not alleged any facts to establish the existence of an agreement" between them to perform any unlawful acts.  (Br. in Supp. 19.)  This short, undeveloped argument is unconvincing.  The second amended complaint identifies several communications between Graham, Ann, and Jim that tend to support the existence of such an agreement.  (*See, e.g.*, Compl. ¶¶ 52, 55.)

59.    The Court therefore denies the motion to dismiss the claim for conspiracy to the extent that claim is based on Ann's alleged breach of fiduciary duty in her role as trustee and on Defendants' alleged breach of contract and the implied covenant of good faith and fair dealing.

## E.  Declaratory Judgment

60.    The declaratory-judgment claim is better viewed as nine requests for distinct, but often overlapping, declarations: (1) that the Amended Operating Agreement is invalid; (2) that Bennett Farm has no validly elected managers; (3) that

---

[8] There is an open question in North Carolina as to whether a breach of contract may support a claim for conspiracy.  Some courts in other jurisdictions have held that it may not.  *See, e.g.*, *Applied Equip. Corp. v. Litton Saudi Arabia Ltd.*, 7 Cal. 4th 503, 522 (1994).  Bert III and Terry have not raised this issue, however, and the Court therefore does not address it.

Graham, Ann, and Jim have no managerial authority over Bennett Farm; (4) that capital calls require member consent; (5) that Bennett Farm's acquisition of the right of first refusal on John's property was not validly authorized; (6) that Bennett Farm also had no authority to exercise or enforce the right of first refusal; (7) that the purchase of Terry's membership interest was improper or fraudulent; (8) that Bert may access Bennett Farm's property; and (9) that Bert, Graham, Ann, Jim, and Louise held an equal membership interest in Bennett Farm as of April 13, 2018. (*See* Compl. ¶¶ 82, 83.) Most, if not all, of the requested declarations turn on the authority of Graham, Ann, and Jim to act as managers of Bennett Farm.[9] The effect, if Bert III and Terry are successful, would be to unravel years of activity by Bennett Farm, including changes to its assets and ownership structure.

61.    Our appellate courts have stressed that "[a] motion to dismiss for failure to state a claim is seldom appropriate 'in actions for declaratory judgments, and will not be allowed simply because the plaintiff may not be able to prevail.'" *Morris v. Plyler Paper Stock Co.*, 89 N.C. App. 555, 557, 366 S.E.2d 556, 558 (1988) (quoting *N.C. Consumers Power, Inc. v. Duke Power Co.*, 285 N.C. 434, 439, 206 S.E.2d 178, 182 (1974)). Rather, a motion to dismiss a declaratory-judgment claim is appropriate only "'when the complaint does not allege an actual, genuine existing controversy,'" which

_____

[9] Graham, Ann, and Jim contend that Bert III and Terry lack standing to seek these declarations for the same reasons asserted as to the claim for breach of fiduciary duty. As noted, the Court concludes that Bert III and Terry have sufficiently alleged a concrete, individual injury. It is also unclear how the *Barger* framework, with its focus on diminution of stock value, applies in the context of declaratory relief.

prevents a court from entering a "purely advisory opinion." *Legalzoom.com, Inc. v. N.C. State Bar*, 2012 NCBC LEXIS 49, at *9 (N.C. Super. Ct. Aug. 27, 2012).

62. Graham, Ann, and Jim argue that nearly all of the requested declarations are improper efforts to nullify contracts—Bennett Farm's Operating Agreement, the right of first refusal, and other contracts transferring membership interests. (*See* Br. in Supp. 19–20.) They point to cases stating that the Declaratory Judgment Act "is not a vehicle for the nullification of [written] instruments." *Farthing v. Farthing*, 235 N.C. 634, 635, 70 S.E.2d 664, 665 (1952). The North Carolina Court of Appeals, however, has rejected this argument. *Farthing* held only that "the validity of a will is a probate matter" and cannot be held void through a declaratory-judgment action. *Bueltel v. Lumber Mut. Ins. Co.*, 134 N.C. App. 626, 630, 518 S.E.2d 205, 208 (1999). "The validity of a contract, however, is a different matter," and this Court "certainly may determine the validity and enforceability of a contract under the Declaratory Judgment Act." *Id.*; *see also, e.g.*, *Allen v. Ferrera*, 141 N.C. App. 284, 292, 540 S.E.2d 761, 767 (2000) (following *Bueltel*); *Tumlin v. Tuggle Duggins P.A.*, 2018 NCBC LEXIS 217, at *40 (N.C. Super. Ct. Dec. 18, 2018) (same); *Haigh v. Superior Ins. Mgmt. Grp.*, 2017 NCBC LEXIS 100, at *20–21 (N.C. Super. Ct. Oct. 24, 2017) (same).

63. The other arguments go toward the merits of the requested declarations. In their opening brief, Graham, Ann, and Jim contend that Bert III has not alleged that he ever possessed the right to access Bennett Farm's property and that, in any event, it was reasonable for them to deny access to the property for members who fail to satisfy capital calls. (*See* Br. in Supp. 20–21.) In their reply brief, Graham, Ann, and

Jim argue more comprehensively that, as a matter of law, they are Bennett Farm's managers and that Bert III and Terry are bound by the Amended Operating Agreement. (*See* Reply Br. Supp. Mot. Dismiss 1–3, ECF No. 39.)

64. The question, though, is not whether Bert III and Terry will prevail on their claim. It is only whether they have identified an actual, genuine controversy. *See Johnson's Landing Homeowners Ass'n, Inc. v. Hotwire Communs., LLC*, 2018 NCBC LEXIS 113, at *11 (N.C. Super. Ct. Oct. 29, 2018); *see also Gvest Real Estate, LLC v. JS Real Estate Invs., LLC*, 2017 NCBC LEXIS 32, at *10 (N.C. Super. Ct. Apr. 6, 2017) (declining to address "arguments more appropriately made in the context of a motion for judgment on the pleadings under Rule 12(c) or a motion for summary judgment under Rule 56"). The parties' views about which members are entitled to exercise managerial authority over Bennett Farm are irreconcilable, giving rise to a definite, concrete controversy. As a result, "[t]he parties are entitled to a declaration of their rights and liabilities and the action should be disposed of only by a judgment declaring them." *Nationwide Mut. Ins. Co. v. Roberts*, 261 N.C. 285, 288, 134 S.E.2d 654, 657 (1964).

65. The Court therefore denies the motion to dismiss the declaratory-judgment claim.

### F. Judicial Dissolution

66. In their final claim, Bert III and Terry seek a decree judicially dissolving Bennett Farm. By statute, a member of an LLC may seek dissolution if "(i) it is not practicable to conduct the LLC's business in conformance with the operating

agreement and [governing statutes] or (ii) liquidation of the LLC is necessary to protect the rights and interests of the member." N.C. Gen. Stat. § 57D-6-02(2). Bert III and Terry invoke both grounds. (*See* Compl. ¶ 121.)

67. Graham, Ann, and Jim begin by arguing that Terry lacks standing to seek dissolution because she is no longer a member of Bennett Farm. (*See* Br. in Supp. 22.) The Court agrees. Although Terry hopes to invalidate or revoke the transfer of her membership through this action, she is currently not a member of Bennett Farm. (*See* Compl. ¶ 2.) Section 57D-6-02(2) does not authorize courts to dissolve limited liability companies in proceedings brought by former members. As a result, Terry lacks standing to seek judicial dissolution. *See Slaughter v. Winner Enters. of Carolina Beach, LLC*, 2019 NCBC LEXIS 1, at *25–26 (N.C. Super. Ct. Jan. 7, 2019) (granting motion to dismiss); *Finkel v. Palm Park, Inc.*, 2018 NCBC LEXIS 112, at *9 (N.C. Super. Ct. Oct. 24, 2018) (same); *Azure Dolphin*, 2017 NCBC LEXIS 90, at *17 (same).

68. There is no dispute, however, that Bert III is a member of Bennett Farm and has standing. Graham, Ann, and Jim contend that his claim fails because he has not alleged that it is impracticable to operate Bennett Farm or that liquidation is necessary to protect his interests. The management disagreements identified in the complaint, they contend, are insufficient to warrant dissolution. (*See* Br. in Supp. 22.)

69. Bert III responds that his siblings have exercised illegitimate authority over Bennett Farm for nearly a decade. He believes that, if his claims are successful, it

would be impossible to unwind all of their actions during that time, leaving dissolution as the only meaningful path forward. (*See* Opp'n 25.) Bert III also looks to dissolution case law in the corporate context, which permits minority shareholders in closely held corporations to seek liquidation when their reasonable expectations have been frustrated. *See Meiselman v. Meiselman*, 309 N.C. 279, 299, S.E.2d 551, 563 (1983).

70. After careful consideration, the Court concludes that it would be premature to dismiss Bert III's claim for judicial dissolution. The second amended complaint alleges that virtually every action taken by Bennett Farm since its inception is tainted by his siblings' usurpation of managerial authority. If Bert III is able to support those allegations after discovery and establish his claims to the satisfaction of a jury, it would raise thorny questions about Bennett Farm's ability to bring itself into compliance with its governing operating agreement, as well as whether nearly a decade of unlawful management has left liquidation as the only way to protect Bert III's rights. In addition, our courts have not yet decided whether and to what extent the principles of *Meiselman* apply to actions under section 57D-6-02(2). *See Brady v. Van Vlaanderen*, 2017 NCBC LEXIS 61, at *31–32 (N.C. Super. Ct. July 19, 2017). As this Court has observed, it is prudent to address such questions on a more fully developed record. *See Pure Body Studios Charlotte, LLC v. Crnalic*, 2017 NCBC LEXIS 98, at *13 (N.C. Super. Ct. Oct. 18, 2017).

71. Accordingly, the Court concludes that Terry lacks standing to seek judicial dissolution and grants the motion to dismiss her claim. The Court denies the motion to dismiss Bert III's claim for dissolution.

## III.
## CONCLUSION

72. For the reasons discussed above, the Court **ORDERS** as follows:

a. The motion to dismiss the claim for breach of fiduciary duty based on the actions of Graham, Ann, and Jim on behalf of Bennett Farm is **GRANTED**. The claim is **DISMISSED with prejudice**.

b. The motion to dismiss the claim for breach of fiduciary duty against Ann in her role as trustee is **DENIED**.

c. The motion to dismiss the claim for constructive fraud is **DENIED** to the extent based on Ann's actions in her role as trustee and **GRANTED** to the extent based on the actions of Graham, Ann, and Jim on behalf of Bennett Farm.

d. The motion to dismiss the claims for breach of contract and breach of good faith and fair dealing is **DENIED**.

e. The motion to dismiss the claim for civil conspiracy is **DENIED** to the extent based on Ann's actions in her role as trustee and on the claims for breach of contract and the implied covenant of good faith and fair dealing. It is **GRANTED** to the extent based on the actions of Graham, Ann, and Jim on behalf of Bennett Farm.

f. The motion to dismiss the claim for declaratory judgment is **DENIED**.

g.    The motion to dismiss Terry's claim for judicial dissolution is **GRANTED**, and the claim is **DISMISSED without prejudice**.  The motion to dismiss Bert III's claim for judicial dissolution is **DENIED**.

73.    The Court further **ORDERS** the parties to file their case management report and a proposed case management order within fourteen days of the date of this Order and Opinion.  *See* Business Court Rule 9.2.

        **SO ORDERED**, this the 15th day of March, 2019.


                                    /s/ Adam M. Conrad
                                    Adam M. Conrad
                                    Special Superior Court Judge
                                     for Complex Business Cases