JUDY WILLIAMS, Plaintiff-Appellant v. CRAFT DEVELOPMENT, LLC; CRAFT HOLDINGS, LLC; and DAN JOHNSON, Defendants-Appellees, and Third-Party Plaintiffs v. MARK LOWDER and DANITA HINSON, Co-Executors of the ESTATE OF HAROLD J. FURR, Third-Party Defendants-Appellees

No. COA09-3

(Filed 1 September 2009)

**1. Contracts— breach of contract—summary judgment**

The trial court did not err by granting defendants' motion for summary judgment on plaintiff's claim for breach of contract because the record was devoid of evidence that plaintiff argued her theory before the trial court.

**2. Contracts— breach of implied covenant of good faith and fair dealing—summary judgment improper**

The trial court erred by granting defendants' motion for summary judgment on plaintiff's claim for breach of the implied covenant of good faith and fair dealing in a case arising from the sale of property with a perpetual life estate. There were issues of material fact and credibility.

**3. Contracts— specific performance—summary judgment**

The trial court did not err by granting defendants' motion for summary judgment on plaintiff's claim for specific performance in an action involving the sale of land with a perpetual life estate. By plaintiff's own admission, she was not able to perform due to her misunderstanding of her interest in the property.

WILLIAMS v. CRAFT DEV., LLC

[199 N.C. App. 500 (2009)]

**4. Civil Procedure— motion to amend—timeliness—bad faith—undue prejudice—undue delay**

The trial court did not abuse its discretion in a breach of contract case by denying plaintiff's motion to amend her complaint.

Appeal by Plaintiff from orders entered 17 September 2008 by Judge R. Stuart Albright in Superior Court, Stanly County. Heard in the Court of Appeals 10 June 2009.

*Essex Richards, P.A., by Edward G. Connette and Russell Fergusson, for Plaintiff-Appellant.*

*Ferguson, Scarbrough, Hayes, Hawkins, & DeMay, P.A., by James E. Scarbrough, for Defendants-Appellees and Third-Party Plaintiffs.*

*Bowling Law Firm, PLLC, by Kirk L. Bowling, for Third-Party Defendants-Appellees.*

McGEE, Judge.

Plaintiff moved into a house in Stanly County in 2003 to provide assistance to her sister, Annie Quinn (Quinn), and to Harold G. Furr (Furr). Quinn and Furr were companions and both were in failing health. Plaintiff also helped Furr with duties related to his business. Furr owned A.J. Furr, Inc. (the company), which was still in existence at the time of this appeal. Furr was the sole stockholder in the company, and treated the assets of the company as his personal assets. The majority of Furr's assets, including the house in which he, Quinn, and Plaintiff resided, were in fact owned by the company. The house was located on approximately sixty-two acres of land (the property) in Stanly County.

Plaintiff was not paid for her services to Quinn and Furr. According to Plaintiff, Furr told Plaintiff he would eventually compensate her for her assistance. Third-Party Defendant Mark Lowder (Lowder) was Furr's attorney, and assisted Furr with legal representation involving both business and personal issues. Lowder was aware that title to the property was held by the company. Shortly before Furr's death in October 2003, Lowder drafted a will for Furr, which Furr executed. In the will, Furr purported to grant a life estate in the property to both Quinn and Plaintiff upon Furr's death. Pursuant to Furr's will, Lowder and Furr's daughter, Third-Party Defendant Danita Hinson (Hinson), were appointed co-executors of Furr's estate (the estate).

Quinn and Plaintiff were informed of the purported life estates after Furr's death, and they continued to live at the property. Quinn died in 2005, and Plaintiff continued to live at the property after that time.

Craft Development, LLC; Craft Holdings, LLC; and Dan Johnson (Defendants) were real estate developers who contacted Lowder in 2006 to inquire about the possibility of purchasing the property. Lowder informed Defendants that, according to Furr's will, Plaintiff possessed a life estate in the property. Lowder further informed Defendants that the estate would not entertain a proposal for sale of the property unless the life estate issue was resolved. Defendants contacted Plaintiff, and Plaintiff agreed to sell her purported life estate to Defendants for $185,000.00. The estate was informed of this agreement and agreed to sell the property to Defendants for $865,000.00. Both contracts for sale named the company as the owner of the property. Defendants performed a title search on the property before closing and decided at some point in time that they would not close on their contract with Plaintiff. However, Defendants did not inform Plaintiff or the estate of their decision. Defendants claim they made this decision after the title search revealed that the property was owned by the company, not Furr, and therefore Furr had no authority to grant a life estate to Plaintiff pursuant to Furr's will. Defendants closed the sale with the estate on 18 April 2007, and title to the property was transferred to Defendants. Plaintiff was first informed that Defendants did not intend to purchase her purported life estate after Defendants had obtained title to the Property.

Plaintiff filed a complaint against Defendants on 31 August 2007, stating claims for breach of contract, implied covenant of good faith and fair dealing, constructive fraud, fraud, unfair and deceptive trade practices, specific performance, and punitive damages. Defendants filed a third-party complaint against the estate on 7 December 2007. Defendants alleged in their complaint that the estate made material misrepresentations to Defendants concerning Plaintiff's purported life estate. Defendants requested that the estate be held responsible for costs incurred by Defendants as a result of Plaintiff's action, and for any potential award Plaintiff might be granted pursuant to Plaintiff's claims against Defendants.

Plaintiff filed a motion for partial summary judgment on Plaintiff's claims for breach of contract and specific performance on 19 November 2007. Plaintiff's motion was denied by order entered 17 December 2007. All parties subsequently filed motions for summary judgment, which were heard on 8 September 2008. Plaintiff filed a

motion on 12 September 2008 to amend her complaint to add the company as a Defendant.

The trial court entered two orders on 17 September 2008. In its first order, the trial court granted Defendants' motion for summary judgment, and dismissed Plaintiff's claims against Defendants. The trial court denied Plaintiff's motion for summary judgment, and determined that the estate's motion for summary judgment was moot. In its second order, the trial court denied Plaintiff's motion to amend her complaint to add the company as a defendant. Plaintiff appeals. Additional relevant facts will be discussed in the body of this opinion.

## I.

[1] In Plaintiff's first, second and third arguments, she contends the trial court erred in granting Defendants' motion for summary judgment because Plaintiff had stated an actionable claim for breach of contract and had offered a forecast of evidence to support that claim. We disagree.

Plaintiff relies upon a provision in the contract entered into between Plaintiff and Defendants wherein Defendants agreed to purchase Plaintiff's life estate in the property. The contract states in relevant part:

After the Contract Date, Buyer shall, at Buyer's expense, cause a title examination to be made of the property before the end of the Examination Period. In the event that such title examination shall show that Seller's title is not fee simple marketable and insurable, subject only to Permitted Exceptions, then Buyer shall immediately notify Seller in writing of all such title defects and exceptions, as of the date Buyer learns of the title defects, and Seller shall have thirty (30) days to cure said noticed defects.

Plaintiff contends on appeal that Defendants did not inform her of the issue concerning the validity of her life estate in the property, as required by the terms of the contract, and thus she was not given thirty days to attempt to address this issue and move forward with the sale. Defendants argue that the discovery that the property was wholly owned by the company, and not Furr, means that Furr was without authority to devise a life estate to Plaintiff in his individual capacity (*i.e.* as a bequest in his personal will). Defendants contend that, because Furr had no power to convey a life estate in the property to Plaintiff, Plaintiff never obtained a life estate and un-

divided fee simple title was held by the company. Defendants argue, therefore, that Plaintiff's illusory life estate did not constitute a defect in title requiring Defendants to notify Plaintiff under the terms of the contract.

In the materials presented to the trial court in support of both Plaintiff's and Defendants' motions for summary judgment, there was a disagreement between Plaintiff and Defendants concerning whether Plaintiff possessed a valid life estate. Plaintiff, in her pleadings and other materials in support of her motion for summary judgment, did not advance her theory that Defendants breached the contract by failing to notify Plaintiff when they became aware of a potential issue with the validity of Plaintiff's purported life estate in the property.[1]

In fact, in her deposition, Plaintiff consistently contended that she held a valid life estate, and never suggested she should have been informed of the issue surrounding her purported life estate in order to allow her to correct any defects in her purported title to that life estate. Plaintiff's deposition testimony indicates that, in her opinion, there was no potential defect in the title because Plaintiff's purported life estate was completely valid. Plaintiff again asserted the validity of her life estate in her "Motion to Amend Complaint," filed 12 September 2008, four days *after* the hearing on the cross-motions for summary judgment. In her motion to amend, Plaintiff stated: "The evidence shows that Plaintiff was granted a possessory life estate interest in certain property. Plaintiff contends that she was granted a valid life estate[.]"

If the summary judgment hearing was recorded, no transcript of that hearing was included in the record. We therefore have no means of determining what arguments Plaintiff may have made to the trial court at that hearing. "'This Court . . . is bound by the record as certified and can judicially know only what appears of record.' 'It is the appellant's duty and responsibility to see that the record is in proper form and complete.' " *State v. Brown*, 142 N.C. App. 491, 492-93, 543 S.E.2d 192, 193 (2001) (citations omitted); *see also Hill v. Hill*, 13 N.C. App. 641, 642, 186 S.E.2d 665, 666 (1972). Because the record before us is devoid of any evidence that Plaintiff argued this issue before the trial court, Plaintiff is prohibited from arguing this issue for the first time on appeal. *Floyd v. Executive Personnel Grp.*, 194

---

1. In the depositions of Dan Johnson and Mark Lowder, Defendants did ask some questions concerning this provision in the contract, but there is no evidence in the record that this theory was further developed or argued to the trial court.

N.C. App. 322, ——, 669 S.E.2d 822, 828 (2008). Failure to argue an issue before the trial court constitutes abandonment of that argument, and it will, other than in certain limited circumstances not relevant in this case, preclude appellate review of that issue. N.C.R. App. P. 10(b)(1); *Dogwood Dev. & Mgmt. Co., LLC v. White Oak Transp. Co.*, 362 N.C. 191, 195-96, 657 S.E.2d 361, 363-64 (2008). This argument is without merit.

Plaintiff's second argument involves interpretation of the language from the purchase contract cited above. As we have held that Plaintiff's breach of contract argument is not properly before us, Plaintiff's arguments concerning the relevant language of the contract are not properly before us either, and we do not address them. This argument is dismissed.

Plaintiff's third argument presents no clear legal theory for redress. In sum, Plaintiff seems to be arguing that Defendants knew about the issues surrounding Plaintiff's purported life estate before ·entering into the contract with Plaintiff. Plaintiff further argues that "[e]xistence of this knowledge by [D]efendants prior to their execution of the [contract] could be interpreted as a waiver of the defects claimed by [D]efendants." Again, because we have held that Plaintiff's breach of contract claim based upon the "defects" clause in the contract is not properly before us, Plaintiff's third argument is also not properly before us.

## II.

[2] In Plaintiff's fourth argument, she contends that the trial court erred by granting Defendants' motion for summary judgment because Plaintiff had stated an actionable claim for breach of contract and breach of the implied covenant of good faith and fair dealing. We agree in part.

In her brief to this Court, Plaintiff only includes her contentions concerning her claim for breach of the implied covenant of good faith and fair dealing. Because Plaintiff makes no argument in this section of her brief concerning any breach of contract claim unrelated to her claim that Defendants breached the implied covenant of good faith and fair dealing, our review is limited to that issue. N.C.R. App. P. 28(b)(6); *Dogwood Dev. & Mgmt. Co., LLC v. White Oak Transp. Co.*, 362 N.C. 191, 200, 657 S.E.2d 361, 367 (2008).

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with

the affidavits, if any, show that there is no genuine issue as to any material fact and that [a] party is entitled to a judgment as a matter of law." N.C.G.S. § 1A-1, Rule 56(c). On appeal of a trial court's allowance of a motion for summary judgment, we consider whether, on the basis of materials supplied to the trial court, there was a genuine issue of material fact and whether the moving party is entitled to judgment as a matter of law. Evidence presented by the parties is viewed in the light most favorable to the non-movant.

*Summmey v. Barker*, 357 N.C. 492, 496, 586 S.E.2d 247, 249 (2003) (citation omitted). On appeal, an order granting summary judgment is reviewed *de novo. Howerton v. Arai Helmet, Ltd.*, 358 N.C. 440, 470, 597 S.E.2d 674, 693 (2004) (citation omitted).

"'In every contract there is an implied covenant of good faith and fair dealing that neither party will do anything which injures the right of the other to receive the benefits of the agreement.' " *Bicycle Transit Authority v. Bell*, 314 N.C. 219, 228, 333 S.E.2d 299, 305 (1985) (citation omitted); *see also Governor's Club, Inc. v. Governor's Club Ltd. P'ship*, 152 N.C. App. 240, 251-52, 567 S.E.2d 781, 789 (2002).

The following relevant evidence was presented to the trial court: Defendant Dan Johnson (Johnson) was a licensed real estate broker. Johnson testified in his deposition that Defendants "buy millions of dollars' worth of property a year." Defendants had hired Jerry Copeland (Copeland), a real estate broker from Charlotte, to join Defendants for the purpose of locating and purchasing property in the area, including property in Stanly County. Copeland became aware of the property and "contacted *A. J. Furr, Incorporated* over in Locust, and . . . talked to one of the girls that worked there" who informed Copeland that the property might be for sale. (Emphasis added). Johnson, Copeland and David Cuphbertson, the owner of the Craft companies, met with Lowder and Hinson at Lowder's office to discuss the property. Lowder stated in an affidavit that he was an attorney who had represented Furr in Furr's business dealings since 1994, and that he had prepared Furr's will, including the purported grant of a life estate to Plaintiff. Lowder further stated in his affidavit that "Furr owned 100% of the stock in his corporations and managed his affairs with little or no distinction between his business and personal financial affairs." In his affidavit, Lowder further stated:

4. During 2006, Dan Johnson and other representatives of Craft Development and Craft Holdings contacted me as Co-Executor of the Estate on numerous occasions to inquire about purchasing the home of Harold Furr on Coley Store Road. I advised Mr. Johnson and others from Craft, that the property was not for sale because of the life estate granted to [Plaintiff].

5. Mr. Johnson inquired of me if the property could be purchased if the life estate was no longer an issue. I indicated to Mr. Johnson, with the agreement of Co-Executor Danita Hinson, that we would consider an offer to purchase the property if the life estate was purchased from [Plaintiff]. [Plaintiff] had lived in the Coley Store Road property pursuant to the life estate since 2003. The Co-Executors honored the life estate granted to [Plaintiff] because it was clearly Mr. Furr's intent to grant her a life estate in the property.

6. I was advised by Mr. Johnson that Craft Development had entered into a contract with [Plaintiff] for the purchase of her life estate. We then negotiated a sale to Craft *because the life estate had been purchased from [Plaintiff]. Absent the contract between Craft and [Plaintiff] for the purchase of her life estate, the property would not have been sold by the Estate to Craft or anyone else.* (Emphasis added).

Johnson affirmed by affidavit and deposition testimony that Lowder and Hinson had informed Defendants that Plaintiff had a life estate and that Defendants would have to settle that issue with Plaintiff before Furr's estate would consider selling the property. Johnson stated: "We prepared a contract to buy the land from *A.J. Furr Inc.* We also prepared a contract to buy a life estate from [Plaintiff]." (Emphasis added). Contracts were in fact prepared by Defendants in which Defendants agreed to purchase Plaintiff's "life estate" and agreed to purchase the property from the seller, listed as "A.J. Furr, Inc." Defendants' contract with Plaintiff was executed on 8 December 2006. Defendants' contract with "A.J. Furr, Inc." was executed on 18 January 2007. Johnson admitted that, because the estate had informed him that Plaintiff had a life estate but the tax records listed the owner of the property as "A.J. Furr, Inc.," he "wanted to cover all the bases there of possible ownership." Johnson further admitted that he was "not aware of anything" that the title search revealed that Defendants did not already know. Defendants closed on the sale of the property pursuant to the "A.J. Furr, Inc." contract, but did not

close on Plaintiff's contract. In his deposition, Johnson admitted Defendants did not inform Plaintiff that they were not going to close on her life estate until after they had closed on the property pursuant to the "A.J. Furr, Inc." contract.

Upon this forecast of evidence, we cannot say, as a matter of law, that no issues of material fact exist concerning this issue. When viewed in the light most favorable to Plaintiff, the evidence could lead a reasonable trier of fact to believe Defendants knew that Plaintiff did not hold a life estate in the property before they drafted and executed the sales contract with Plaintiff. A reasonable mind could determine Defendants executed the contract with Plaintiff as an artifice to induce the estate to sell Defendants the property, never intending to honor the contract with Plaintiff. It is undisputed the estate informed Defendants that they would have to remedy the life estate issue with Plaintiff before the estate would consider selling the property to Defendants.

We hold this issue was not properly decided on summary judgment, as there were issues of material fact and credibility involved. *Barker*, 357 N.C. at 496, 586 S.E.2d at 249. Determination of these issues is the sole province of the trier of fact, following trial. We reverse and remand to the trial court for further action on this claim consistent with this holding.

III.

[3] In Plaintiff's fifth argument, she contends the trial court erred in granting Defendants' motion for summary judgment on her claim for specific performance. We disagree.

Plaintiff, citing *McLean v. Keith*, 236 N.C. 59, 71, 72 S.E.2d 44, 53 (1952), states in her brief: "The remedy of specific performance is available to 'compel a party to do precisely what [it] ought to have done without being coerced by the court.' " Plaintiff, citing *Munchak Corp. v. Caldwell*, 301 N.C. 689, 694, 273 S.E.2d 281, 285 (1981), also states in her brief: "A 'party claiming the right to specific performance must show the existence of a valid contract, its terms, and either full performance on [her] part or that [she] is ready, willing and able to perform.' " Plaintiff contends that she was "ready and willing to perform the contract as written. Her ability to perform was compromised by her misunderstanding of her interest and the [D]efendants' failure to notify and grant the agreed upon thirty day term for her to correct the claimed defect in her title." Accepting Plaintiff's argument as stated, she does not meet the elements necessary for a claim of

specific performance. By Plaintiff's own admission, she was not "able" to perform, due to "her misunderstanding of her interest[.]" Plaintiff's misunderstanding cannot transform an inability to perform into an ability to perform. Plaintiff argues that she could have potentially corrected the defect had she been given the notice required under the contract. We have previously held that Plaintiff has not preserved this argument for appellate review, and we do not consider it here. This argument is without merit.

IV.

[4] In Plaintiff's sixth argument, she contends the trial court erred in denying her motion to amend her complaint as untimely. We disagree.

The hearing on the cross-motions for summary judgment was conducted on 8 September 2008. Plaintiff filed her motion to amend her complaint seeking to add the company as a defendant on 12 September 2008. The trial court filed its order denying Plaintiff's motion for summary judgment and granting Defendants' motion for summary judgment on 17 September 2008. The trial court stated in its 17 September 2008 order denying Plaintiff's motion to amend: "Defendants' motions for summary judgment were heard by this court . . . and the court took the matter under advisement until September 12, 2008 in order for the court to review the evidence and the memorandums of law submitted by the parties." The trial court further stated: "On September 12, 2008 the parties again appeared before the court to receive the ruling of the court and at that time [P]laintiff moved for the first time to amend the complaint to avoid a possible adverse summary judgment ruling." The trial court denied Plaintiff's motion to amend "for the reason that, among other things, it is untimely[.]"

Plaintiff contends the reason she did not move to amend her complaint earlier is because Lowder's deposition contradicted certain of his earlier positions, which had been supportive of Plaintiff's claims.

> Under Rule 15(a) of the North Carolina Rules of Civil Procedure, leave to amend a pleading shall be freely given except where the party objecting can show material prejudice by the granting of a motion to amend. A motion to amend is directed to the discretion of the trial court. The exercise of the court's discretion is not reviewable absent a clear showing of abuse.

*Martin v. Hare*, 78 N.C. App. 358, 360-61, 337 S.E.2d 632, 634 (1985) (citations omitted).

"In the absence of any declared reason for the denial of leave to amend, this Court may examine any apparent reasons for such denial." Reasons justifying denial of an amendment are (a) undue delay, (b) bad faith, (c) undue prejudice, (d) futility of amendment, and (e) repeated failure to cure defects by previous amendments.

*Id.* at 361, 337 S.E.2d at 634 (citation omitted). It is Plaintiff's burden to prove the trial court abused its discretion in denying her motion to amend. *Id.*, 337 S.E.2d at 635.

We hold that Plaintiff has not carried her burden of showing a clear abuse of discretion by the trial court in denying her motion to amend. Lowder was deposed on 11 July 2008, more than two months before Plaintiff filed her motion to amend. The transcript of Lowder's deposition was completed on 29 July 2008, more than one and a half months before Plaintiff filed her motion to amend. Plaintiff had ample time to file a motion to amend to include the company as a defendant before the 8 September 2008 summary judgment hearing if Lowder's deposition testimony was the impetus for her motion. In light of these facts, we defer to the trial court's discretionary determination that Plaintiff filed her motion to amend the same day that the trial court delivered its rulings on the cross-motions for summary judgment in order "to avoid a possible adverse summary judgment ruling." This determination by the trial court supports both "bad faith" and "undue prejudice" for its denial of the motion to amend.

Further, though there is no set time limit for filing motions to amend, *North River Ins. Co. v. Young*, 117 N.C. App. 663, 671, 453 S.E.2d 205, 210-11 (1995), we hold the fact that Plaintiff did not move to amend her complaint until more than a year after she filed her original complaint, and the fact that she did not move to amend until after the hearing on the cross-motions for summary judgment, are sufficient grounds to deny her motion to amend based upon "undue delay." *See Wall v. Fry*, 162 N.C. App. 73, 80, 590 S.E.2d 283, 287 (2004). We hold the trial court did not abuse its discretion in denying Plaintiff's motion to amend. This argument is without merit.

Affirmed in part, reversed and remanded in part.

Judges JACKSON and ERVIN concur.