An unpublished opinion of the North Carolina Court of Appeals does not constitute controlling legal authority. Citation is disfavored, but may be permitted in accordance with the provisions of Rule 30(e)(3) of the North Carolina Rules of Appellate Procedure.

IN THE COURT OF APPEALS OF NORTH CAROLINA

No. COA 25-706

Filed 1 April 2026

Wake County, No. 23CV035053-910

EWC RALEIGH CV, LLC, Plaintiff,

v.

EWC OF CAMERON VILLAGE, INC., RACHEL C. WHIDBY, and MICHELLE HURLEY, Defendants.

Appeal by plaintiff from orders entered 17 March 2025 and 26 March 2025 by Judge Vinston M. Rozier, Jr., in Wake County Superior Court. Heard in the Court of Appeals 24 February 2026.

> *Smith, Anderson, Blount, Dorsett, Mitchell & Jernigan, L.L.P., by Edward F. Roche, Hope C. Garber, John L. Gibbons, and Noel F. Hudson, for plaintiff-appellant.*

> *Ellis & Winters, LLP, by Kelly Margolis Dagger, Michelle A. Liguori, Chelsea A. Pieroni, and Jacob V. Stewart, for defendants-appellees.*

FLOOD, Judge.

Plaintiff EWC Raleigh CV, LLC, appeals from orders entered by the trial court dismissing its breach of contract claim and denying its motion to amend its

complaint.[1] On appeal, Plaintiff argues the trial court, first, erred by dismissing Plaintiff's breach of contract claim, and second, abused its discretion in denying Plaintiff leave to amend its complaint. Upon careful review, we conclude the trial court erred in dismissing Plaintiff's breach of contract claim as to misrepresentations, where Plaintiff sufficiently pled allegations, but it did not err in dismissing the breach of indemnification clauses, where Plaintiff insufficiently pled those allegations. Further, we conclude the trial court did not abuse its discretion in denying Plaintiff's motion to amend for undue delay, where Plaintiff waited over a year to move to amend its breach of contract claim and had previously moved to amend its complaint for other reasons.

## I. **Factual and Procedural Background**

Plaintiff is a franchise of European Wax Center, LLC, which is a nationwide salon chain. On 27 December 2021, Plaintiff entered into agreements with Defendants Rachel Whidby and Michelle Hurley regarding the sale of two other European Wax Center franchises: EWC of North Raleigh, and Defendant EWC of Cameron Village, Inc. At issue here is the agreement between Plaintiff and Defendants regarding the sale of Defendant EWC of Cameron Village (the

---

[1] Although Plaintiff also appeals from the trial court's order denying Plaintiff's motion to reconsider, Plaintiff does not make any argument for this order in its brief; thus, we address only the two orders substantively discussed in Plaintiff's brief. *See* N.C. R. App. P. 28(b)(6) (2025) ("Issues not presented in a party's brief, or in support of which no reason or argument is stated, will be taken as abandoned.").

"Agreement"). The Agreement provided the purchase price for Defendant EWC of Cameron Village would be $1,687,500.00, with $1,518,750.00 being paid at the closing and $168,750.00 (the "Holdback") being paid nine months after closing.

The Agreement specified the holdback carried the option of being "reduced in accordance with Section 8.7[.]" This section of the Agreement provided:

> 8.7 <u>Release of Holdback</u>. The Holdback minus the amount of any validly asserted but unresolved indemnification claims or resolved but unreleased indemnification claims of [Plaintiff] pursuant to this Section 8 will be released to [Defendants] in certified or wired funds on the first business day after the date that is 9 months after the Closing Date.

Under the Agreement, the indemnification procedures provided Plaintiff "shall promptly provide written notice of such claim to [Defendants]."

Furthermore, the Agreement provided full disclosure on behalf of Defendants:

> 5.17 <u>Full Disclosure</u>. No representation or warranty by [Defendants] in this Agreement and no statement contained in the Disclosure Schedules to this Agreement or any certificate or other document furnished or to be furnished to [Plaintiff] pursuant to this Agreement contains any untrue statement of a material fact, or omits to state a material fact necessary to make the statements contained therein, in light of the circumstances in which they are made, not misleading.

After closing, and upon taking over Defendant EWC of Cameron Village, Plaintiff alleged it learned Defendants had failed to disclose the following:

> a. Gross sales declined by more than 40% year-over-year in November 2021;

b. Gross sales declined by nearly 30% year-over-year in December 2021;

c. Gross sales declined by 45% year-over-year in January 2021;

d. The Franchise lost money in November 2021 and December 2021 and made only approximately $1,600 in January 2022, representing a sharp decline in profitability as compared to its performance through October 2021;

e. Four waxers departed the Franchise from September 2021 through November 2021;

f. One of the departing waxers resigned effective immediately on October 30, 2021, to open a competing studio;

g. Another of the departing waxers resigned in November 2021 to join that competing studio;

h. Customers of the waxers who opened the competing studio stopped patronizing the Franchise.

i. Customers of the waxers who opened the competing studio requested and received refunds for prepaid services from the Franchise.

Pursuant to the Agreement, Plaintiff decided to utilize the indemnification provision, which provided Defendants would indemnify Plaintiff "against . . . any and all [l]osses, incurred . . . arising out of, or with respect to":

> (a) any inaccuracy in or breach of any of the representations or warranties of Seller contained in this Agreement, any other Transaction Document, or any schedule, certificate, or exhibit related thereto, as of the date such representation or warranty was made or as if such representation or warranty was made on and as of the Closing Date (except for representations and warranties

that expressly relate to a specified date, the inaccuracy in or breach of which will be determined with reference to such specified date)[.]

On 28 October 2022, Plaintiff sent a written notice of an indemnification claim to Defendant Whidby; however, Plaintiff addressed this notice to "EWC of North Raleigh, Inc. 9017 Winged Thistle Court Raleigh, NC 27617" and wrote the subject as the agreement between Plaintiff and "EWC of North Raleigh, Inc., a North Carolina corporation ('Seller'), and, for limited purposes, Michelle Hurley and Rachel Whidby (the 'Principals')[.]"

On 26 January 2023, Defendants responded, through counsel:

> My clients are confident they made all disclosures requested of them. While [Plaintiff] may not have seen the November and December 2021 numbers it is not because [Defendants] were misrepresenting anything. Those documents had not been prepared at the time of closing.
>
> However, there were numerous meetings via Zoom during this time period and my client disclosed the loss of some key employees in the fall of 2021. That certainly did have an effect on November and December's numbers but that was fully disclosed.
>
> Additionally, competition was increasing and continues to increase around the stores. Your clients opened a store in Olde Raleigh Village in May of 2022. Additionally, another location was opened in March of 2022 in the Knightdale area. Other wax stores were and have been opened (not a part of the franchise) in the Raleigh area over the last several months as well.
>
> In an effort to resolve the matter my client is willing to reduce its demand for the balance of the Cameron Village purchase price by one half. My client still demands full

payment on the balance due for the North Raleigh store.

The parties did not come to an agreement, Plaintiff did not pay the Holdback, and Plaintiff sued on 8 December 2023 for breach of contract and intentional misrepresentation.

Regarding its breach of contract claim, Plaintiff alleged "Defendants breached the [Agreement] by failing to disclose material information about the Business[,]" "Defendants breached the [Agreement] by failing to indemnify Raleigh[,]" and thus Plaintiff suffered damages "in an amount to be proven at trial." Regarding its intentional misrepresentation claim, Plaintiff alleged "Defendants owed [Plaintiff] a duty to provide complete and accurate information related to the Business during the negotiation and signing of the [Agreement] through the Closing[,]" and "Defendants made an affirmative, knowing, or reckless misrepresentation of a material fact by failing to disclose the Business's significant sales decline."

On 9 February 2024, Defendants filed a motion to dismiss, contending "Plaintiff's claims are based on indemnification language contained in the Agreement between the parties and attached to the [c]omplaint. Plaintiff failed to give timely notice of the indemnification claim as required by the Agreement and the claims should be dismissed." Along with their motion to dismiss, Defendants also filed an answer putting forth several affirmative defenses to Plaintiff's claims, including, *inter alia*, Plaintiff could not recover damages for its breach of contract claim because it also breached the contract and "Plaintiff waived all claims based on a failure to

produce financial documents detailed in the [c]omplaint by failing to require them before the closing date." Defendants also filed their own breach of contract counterclaim:

> 71. The Plaintiff failed to give notice of any indemnification claim to Defendant, as required by the [Agreement].
>
> 72. As there was no proper indemnification claim, Plaintiff was required to pay the sum of $168,750.00 to Defendant on November 1, 2022.
>
> 73. Plaintiff failed to pay the sum due on or before November 1, 2022.

Plaintiff replied to Defendants' counterclaim on 11 March 2024, and trial was set for 17 March 2025.

On 3 January 2025, Plaintiff filed a motion for partial summary judgment, contending it was entitled to judgment as a matter of law on its breach of contract claim. Within this motion, although not included in the Record, Plaintiff noted to the trial court, "[i]n addition, Plaintiff currently has a motion pending for leave to amend the [c]omplaint to assert a claim under the North Carolina Unfair and Deceptive Trade Practices Act." Five days later, Defendants responded in opposition and moved for summary judgment on both of Plaintiff's claims.

On 17 February 2025, the trial court heard arguments on, *inter alia*, Defendants' motion to dismiss, Plaintiff's motion for partial summary judgment, and Plaintiff's motion to amend. **{T 17 Feb. 2025 p 2}** At the hearing, while the parties were discussing Plaintiff's motion to amend, the following conversation took place:

[PLAINTIFF'S COUNSEL]: If I may note just at the outset, some of the minor changes in the amended complaint are actually just tweaks on the contractual claims. Defendants have raised no objections to those in their motion, in their brief or anywhere else. So we see them to be conceding that those are proper amendments and those --

[DEFENDANTS' COUNSEL]: We would not concede that, Your Honor, just for edification.

THE COURT: You can hold onto it.

[DEFENDANTS' COUNSEL]: Thank you.

[PLAINTIFF'S COUNSEL]: -- those would be allowed for that reason. If not I would like to respond to their argument on that because we haven't heard it before. The issue here I think, the primary issue as Your Honor raised, is can the plaintiff add the Unfair and Deceptive Trade Practices Act claim and their related allegations.

After hearing arguments on Plaintiff's motion to amend, the trial court then heard arguments on the other motions. The trial court subsequently dismissed Plaintiff's breach of contract claim without prejudice but denied Defendants' motion to dismiss Plaintiff's intentional misrepresentation claim. The trial court also denied Plaintiff's motion to amend. Although the trial court did not enter this order until 17 March 2025, the parties were notified via email of the trial court's ruling on 20 February 2025.

On the following day, on 21 February 2025, Plaintiff filed another motion to amend its complaint (the "Second Motion to Amend"), seeking "to amend its [c]omplaint to replead its breach of contract claim, and, specifically, to add further

factual allegations about the contractual provisions on which it is relying and regarding its compliance with the [Agreement]'s pre-suit notice provisions." Plaintiff wished to add the following factual allegations:

> 24. [Defendants] also included representations that no material changes had occurred between December 2020 and signing, or between signing and closing.
>
> 25. They also included a representation that the purchased assets were "sufficient for the continued conduct of the Business after the Closing in substantially the same manner as conducted" before Closing.
>
> . . . .
>
> 39. [Plaintiff] *fully complied with the requirements of Section 8.5 of the* [*Agreement*]. On October 28, 2022, [Plaintiff] sent notice of its claims to Defendants. . . . .
>
> 40. The letter contained a scrivener's error in that it was addressed to Defendant Whidby at EWC of North Raleigh, Inc. instead of to her at EWC of Cameron Village Inc. The parties had simultaneously consummated a transaction for the North Raleigh location, which is not at issue in this lawsuit.
>
> 41. The October 28, 2022 letter plainly refers to the Cameron Village location by (1) identifying the loss of waxers, an issue that all parties agreed was unique to Cameron Village and was not being experienced at North Raleigh, (2) by including the [H]oldback amount for the Cameron Village location in its statement about the value of Plaintiff's claim, and (3) by copying the Plaintiff in this action.
>
> 42. Accordingly, the letter was sufficient to put Defendants on notice of Plaintiff's claim.
>
> 43. Providing reasonable notice is all that is required under

the [Agreement] and under North Carolina law. . . . .

44. Defendants had actual notice of Plaintiff's claims regarding the Cameron Village location[.]

45. Upon receiving the letter on October 28, 2022, Defendant Whidby sent a text message to Defendant Hurley about the claim and acknowledging that it was for at least "the remaining amount of sales of $375,000," referencing the [H]oldbacks for both the North Raleigh and Cameron Village locations.

46. Defendant Whidby expressed no confusion about what was at issue in this text message.

47. Further, on November 8, 2022, Defendants responded, through counsel, to the October 28, 2022 letter on behalf of both the Cameron Village and North Raleigh locations and refuting the allegations with respect to Cameron Village.

48. Defendants' counsel followed up again, unprompted, on January 26, 2023, seeking to settle Plaintiff's claim regarding Cameron Village and not making any concession regarding North Raleigh. . . . .

49. Under the circumstances, Plaintiff's notice of its claim was sent promptly.

50. There is no deadline to assert a claim under the [Agreement].

51. Plaintiff's notice of claim was sent before any [H]oldback amount was due to be released Defendants.

52. Plaintiff operated the Business for several months in an attempt to turn around the franchise's poor financial performance that Defendants had intentionally and fraudulently concealed before the sale. It was reasonable for Plaintiff to want to see if the Business's performance improved, especially during the typically busy summer season, in the hopes that it would become unnecessary to

raise a dispute. The Business's performance remained depressed, and Plaintiff promptly sent the notice of claim.

Plaintiff additionally filed a motion to reconsider with the trial court on 24 February 2025. On 4 March 2025, Plaintiff filed a motion to continue the upcoming trial until 5 May 2025. Defendants responded to these motions, arguing Plaintiff's Second Motion to Amend should be denied for undue delay, undue prejudice, and futility, and requesting Plaintiff's motion to continue be denied. As to undue delay, Defendants specifically argued that Plaintiff received notice of Defendants' motion to dismiss on 9 February 2024, but did not move to amend the complaint regarding indemnification allegations until over a year later on 21 February 2025, and that Plaintiff had the opportunity to address the pleadings in its first motion to amend but did not do so.

On 17 March 2025, the day trial was set to begin, the trial court heard arguments on Plaintiff's motions, which it subsequently denied. After the trial court denied Plaintiff's motions, Plaintiff moved to stay the proceedings for appeal, and the trial court granted Plaintiff's motion. Plaintiff timely appealed.

## II. <u>Jurisdiction</u>

We first address whether we have jurisdiction to hear an appeal from these interlocutory orders. "An interlocutory order is one made during the pendency of an action, which does not dispose of the case, but leaves it for further action by the trial court in order to settle and determine the entire controversy[,]" and is "generally not

immediately appealable." *Batesville Casket Co. v. Wings Aviation, Inc.*, 214 N.C. App. 447, 453 (2011).

> Nonetheless, in two instances a party is permitted to appeal interlocutory orders. First, a party is permitted to appeal from an interlocutory order when the trial court enters a final judgment as to one or more but fewer than all of the claims or parties and the trial court certifies in the judgment that there is no just reason to delay the appeal. Second, a party is permitted to appeal from an interlocutory order when the order deprives the appellant of a substantial right which would be jeopardized absent a review prior to a final determination on the merits. Under either of these two circumstances, it is the appellant's burden to present appropriate grounds for this Court's acceptance of an interlocutory appeal and our Court's responsibility to review those grounds.

*Id.* (citation modified). As we do not have a certification from the trial court in this case, we analyze whether the trial court's orders affect a substantial right.

Plaintiff argues its "dismissed contract claim overlaps significantly with both its misrepresentation claim and Defendants' counterclaim" and that "[f]actual overlap between claims—particularly involving misrepresentations—is a well-worn avenue for interlocutory appeal[,]" invoking the "inconsistent verdicts doctrine." *See Shearon Farms Townhome Owners Ass'n II, Inc. v. Shearon Farms Dev., LLC*, 272 N.C. App. 643, 647 (2020).

"The inconsistent verdicts doctrine is a subset of the substantial rights doctrine[.]" *Id.* at 646. Importantly,

> when the same fact is determinative of the same issue in multiple claims, there is a substantial right to have those

factual issues determined by the same jury to avoid the risk that two juries decide that fact differently, leading to two judgments from the same initial lawsuit with incompatible outcomes.

*Id.* at 647 (holding the plaintiff met its burden of showing there was a risk of inconsistent verdicts where "some claims against both sets of [the] defendants involve[d] questions of whether the windows [were] defective and caused the alleged damage to the siding of neighboring homes").

Here, Plaintiff's breach of contract claim and Defendants' breach of contract counterclaim involve the same question of whether Plaintiff gave proper notice of the indemnification claim such that Defendants breached the contract by failing to indemnify Plaintiff. Thus, Plaintiff has met its burden of showing there is a risk of inconsistent verdicts, and we proceed to review the merits of Plaintiff's appeal from these interlocutory orders. *See id.* at 647.

## III. <u>Analysis</u>

On appeal, Plaintiff argues the trial court erred by (A) dismissing Plaintiff's breach of contract claim, and (B) denying Plaintiff's Second Motion to Amend. Additionally, Defendants contend on appeal, if this Court concludes the trial court erred in dismissing Plaintiff's breach of contract claim, this Court may decide whether Defendants were entitled to summary judgment on Plaintiff's breach of contract claim. We address each argument in turn.

### A. Breach of Contract

Plaintiff first argues the trial court erred by dismissing its breach of contract claim. Specifically, Plaintiff contends it set forth sufficient facts in its complaint for a breach of contract claim and that "Defendants' assertion that [Plaintiff] 'failed to give timely notice of the indemnification claim,' . . . has no bearing on the allegations required to state a claim." We disagree.

This Court reviews the granting of a motion to dismiss de novo. *See Taylor v. Bank of Am., N.A.*, 382 N.C. 677, 679 (2022). "[U]nder de novo review, the appellate court as the reviewing court considers the Rule 12(b)(6) motion to dismiss anew: It freely substitutes its own assessment of whether the allegations of the complaint are sufficient to state a claim for the trial court's assessment." *Id.* at 679. We do not "assess[] or review of the trial court's reasoning. Rather, the appellate court affirms or reverses the disposition of the trial court—the granting of the Rule 12(b)(6) motion to dismiss—based on the appellate court's review of whether the allegations of the complaint are sufficient to state a claim." *Id.* We are to "liberally construe[]" the complaint, "viewing all permissible inferences in the light most favorable to the nonmovant," and we "should not dismiss the complaint unless it appears beyond doubt the plaintiff could prove no set of facts in support of his claim which would entitle him to relief." *Gouch v. Rotunno*, 291 N.C. App. 7, 10 (2023) (citation and internal quotation marks omitted). "A complaint is without merit if: (1) there is an absence of law to support a claim of the sort made; (2) there is an absence of fact sufficient to make a good claim; or (3) there is the disclosure of some fact which will

defeat a claim." *Id.* (citation and internal quotation marks omitted).

"In an action for breach of contract, the complaint must allege (1) the existence of a contract between the parties, (2) the specific provisions breached, (3) the facts constituting the breach, and (4) the damages resulting to the plaintiff from the breach." *Thompson v. Bass*, 261 N.C. App. 285, 290 (2018).

Here, there is no dispute that Plaintiff's complaint sufficiently alleged a valid contract existed between the parties; instead, on appeal, Plaintiff argues it alleged sufficient facts to show that "Defendants breached four provisions, sections 5.3, 5.5, 5.17, and 8.2." In its complaint, Plaintiff alleged, in relevant part:

> 23. Under Section 5.3 of the [Agreement], Defendants provided Business financial statements for all of 2020 and through October of 2021. Under Section 5.3 of the [Agreement], Defendants represented that the Business financial statements fairly and accurately presented the financial position of the Business.
>
> 24. Under Section 5.5 of the [Agreement], Defendants represented that since October 31, 2021 (almost two months prior to the Closing of [Agreement]): there has not been any change, event, condition, or development that is, or could reasonably be expected to be, individually or in the aggregate, materially adverse to: (a) the business, results of operations, condition (financial or otherwise), or assets of the Business; or (b) the value of the Purchased Assets.
>
> 25. Under Section 5.17 of the [Agreement], Defendants represented that: No representation or warranty by Seller in this Agreement and no statement contained in the Disclosure Schedules to this Agreement or any certificate or other document furnished or to be furnished to Buyer pursuant to this Agreement contains any untrue statement of a material fact, or omits to state a material fact

necessary to make the statements contained therein, in light of the circumstances in which they are made, not misleading.

26. Under Section 8.2 of the [Agreement], Defendants agreed to: jointly and severally indemnify and defend each of [Plaintiff] and its Affiliates and their respective Representatives, . . . against, and shall hold each of them harmless from and against, any and all Losses, incurred or sustained by, or imposed upon, [Plaintiff] based upon, arising out of, or with respect to any inaccuracy in or breach of any of the representations or warranties of [Defendant] contained in this Agreement.

27. Under Section 8.2 of the [Agreement], Defendants also agreed to indemnify [Plaintiff] for Losses arising from, "any breach or non-fulfillment of any covenant, agreement, or obligation to be performed by Seller or any Principal pursuant to this Agreement."

. . . .

29. Under Section 8.5 of the [Agreement], "[w]henever any claim shall arise for indemnification hereunder, the Indemnified Party shall promptly provide written notice of such claim to the Indemnifying Party."

30. Under [] Section 8.7 of the [Agreement]:

> "The Holdback minus the amount of any validly asserted but unresolved indemnification claims or resolved but unreleased indemnification claims of Buyer pursuant to this Section 8 will be released to Seller in certified or wired funds on the first business day after the date that is 9 months after the Closing Date."

31. . . . . Defendants delayed producing November 2021, December 2021, and January 2022 financials. These financials coincided with a drastic drop in Business sales. Defendants knew the sales dramatically declined because

they had access to the Zenoti, a cloud-based business management system for salons and spas, that provides daily sales information.

32. Upon information and belief, the Business's sales dropped by over 40% year over year in November 2021, nearly 30% year over year in December 2021, and approximately 45% year over year in January 2022.

33. During due diligence and other calls leading up to the [Agreement] signing in December 2021 and the Closing in January 2022, Defendants indicated that although full financials had not been completed for November and December 2021, the Business was doing well. At the time Defendants made those statements, Defendants knew of the significant decline in sales, especially because Defendants had access to the Zenoti system which provides daily sales information.

34. Defendants' failure to provide sales information, at a minimum, for November 2021, December 2021, and January 2022 was particularly inappropriate because the Business uses Zenoti which provides daily sales information. Thus, Defendants could have easily provided [Plaintiff] with sales information at any point in November 2021, December 2021, or January 2022.

35. During these same diligence calls, Defendants indicated that an unspecified number of employees had left, but that the departing employees had been or being replaced with new employees. Defendants never indicated that it was experiencing precipitous sales declines for this or any reason.

36. The undisclosed precipitous drop in sales was materially adverse to the business, results of operations, condition, and the value of the Business.

37. Had [Plaintiff] known about the precipitous drop in sales, [Plaintiff] would not have paid the purchase price stated in the [Agreement] and may have cancelled the

transaction all together as such adverse changes were a failure of a material condition to closing.

38. Just after the Closing in January of 2022, [Plaintiff] learned about Defendants' nondisclosure of the material adverse changes and attempted to try to resolve the issues with Defendants over a period of months. However, Defendants failed to provide a reasonable resolution.

39. After it became clear that Defendants would not voluntarily address the issues caused by its non-disclosure, [Plaintiff] demanded that Defendants indemnify [Plaintiff] for the Losses it incurred as a result of Defendants' breaches of the [Agreement] on October 28, 2022.

40. Defendants have refused to indemnify [Plaintiff] for its losses.

Although Plaintiff references sections 8.2, 8.5, and 8.7, Plaintiff does not allege it properly performed section 8.5's trigger for an indemnification claim under the Agreement, which required a "written notice"; instead, Plaintiff only claimed it "attempted to try to resolve the issues with Defendants over a period of months." Furthermore, even though Plaintiff attached the notice with its complaint, it did not allege any facts indicating this was a proper notice to Defendant EWC of Cameron Village rather than the addressed EWC of North Raleigh. Plaintiff sought to include the necessary facts only after learning the trial court had granted Defendants' motion to dismiss. Even viewing the alleged pleadings in the light most favorable to Plaintiff, the complaint fails to include facts "sufficient to make a good [breach of contract for the indemnification provision] claim"; thus, we conclude the trial court properly dismissed this specific part of the claim. *See Gouch*, 291 N.C. App. at 10.

This does not, however, end our analysis; Plaintiff's breach of contract claim also pled that "Defendants breached the [Agreement] by failing to disclose material information about the Business."

Here, the Agreement provided,

> [s]ubject to Section 3.2, Section 7.3(c), and Section 9.11, the Parties acknowledge and agree that their sole and exclusive remedy with respect to any and all claims (*other than claims arising from intentional misrepresentation* or fraud on the part of a Party hereto in connection with the transactions contemplated by this Agreement) for any breach of any representation, warranty, covenant, agreement or obligation set forth herein or otherwise relating to the subject matter of this Agreement shall be pursuant to the indemnification provisions set forth in this Section 8. Nothing in this Section 8.8 shall limit any Party's right to seek and obtain any equitable relief to which such Party shall be entitled.

(Emphasis added.) Thus, the Agreement specifically provides that nothing shall limit Plaintiff's right to seek equitable relief from any breach of representation done *intentionally*. As such, Plaintiff's breach of contract claim for misrepresentation is not contingent on Plaintiff's claim for the breach of the indemnification provision, nor on notice of that claim, if pled, as breached intentionally. We therefore analyze whether Plaintiff, on the face of the pleadings, has sufficiently pled a breach of contract for misrepresentation done intentionally so as to survive a motion to dismiss. We agree with Plaintiff that it did.

Plaintiff specifically pled Defendants breached sections 5.3, 5.5, and 5.17 of the Agreement regarding representations, and factually alleged:

> During due diligence and other calls . . . Defendants indicated that although full financials had not been completed for November and December 2021, the Business was doing well. At the time Defendants made those statements, Defendants *knew of the significant decline* in sales, especially because Defendants had access to the Zenoti system which provides daily sales information.

Thus, Plaintiff properly pled a breach via misrepresentation resulting from intentional actions, and the trial court erred in dismissing this portion of Plaintiff's breach of contract claim. *See id.* at 10.

Defendants argue on appeal, however, even if we hold the trial court erred in dismissing Plaintiff's breach of contract claim pursuant to Rule 12(b)(6), this Court may conclude the trial court could have granted summary judgment in favor of Defendants on this matter.

Our Supreme Court has explained that "[i]f the granting of summary judgment can be sustained on any grounds, it should be affirmed on appeal. If the correct result has been reached, the judgment will not be disturbed even though the trial court may not have assigned the correct reason for the judgment entered." *Shore v. Brown*, 324 N.C. 427, 428 (1989). "Summary judgment is appropriate when no genuine issue of material fact exists, and a party is entitled to judgment as a matter of law." *Value Health Sols., Inc. v. Pharm. Rsch. Assocs., Inc.*, 385 N.C. 250, 267 (2023). We cannot say as a matter of law, however, that Defendants are entitled to summary judgment where a question of fact exists as to whether Defendants intentionally hid this information from Plaintiff and whether this information was material pursuant to

the Agreement. Thus, we affirm the trial court's granting of Defendants' motion to dismiss in part regarding Plaintiff's claim for breach of the indemnification provision, but we reverse in part and remand to the trial court regarding Plaintiff's claim for breach via misrepresentation.

### B. Amending Complaint

Plaintiff next argues the trial court erred by denying its Second Motion to Amend its complaint. Specifically, Plaintiff contends the trial court abused its discretion in denying Plaintiff's motion because Defendants could not show they would be materially prejudiced. Alternatively, Plaintiff asserts the trial court denied its motion on a misapprehension of the law, which is reversible error. We disagree.

This Court reviews the denial of a motion to amend for an abuse of discretion. *Pruett v. Bingham*, 238 N.C. App. 78, 86 (2014), *aff'd*, 368 N.C. 709 (2016). "A trial court's denial of a motion to amend a complaint can only be reversed upon proof by a litigant that the challenged actions are manifestly unsupported by reason." *Id.* (citation and internal quotation marks omitted).

After a party has responded to a plaintiff's original pleading, "a party may amend his pleading only by leave of court or by written consent of the adverse party; and leave shall be freely given when justice so requires." N.C.G.S. § 1A-1, Rule 15(a) (2023). "Under Rule 15(a) of the North Carolina Rules of Civil Procedure, leave to amend a pleading shall be freely given except where the party objecting can show material prejudice by the granting of a motion to amend." *Williams v. Craft Dev.*,

*LLC*, 199 N.C. App. 500, 509 (2009), *writ denied, review denied*, 363 N.C. 859 (2010).

"If the trial court articulates a clear reason for denying the motion to amend, then our review ends. Acceptable reasons for which a motion to amend may be denied are undue delay, bad faith, dilatory motive, repeated failure to cure deficiencies, undue prejudice and futility of the amendment." *JPMorgan Chase Bank, Nat'l Ass'n v. Browning*, 230 N.C. App. 537, 541 (2013) (citation and internal quotation marks omitted); *see also News & Observer Pub. Co. v. Poole*, 330 N.C. 465, 485 (1992) ("Among proper reasons for denying a motion to amend are *undue delay by the moving party* and unfair prejudice to the nonmoving party." (emphasis added)).

"In the absence of any declared reason for the denial of leave to amend, this Court may examine any apparent reasons for such denial." *Williams*, 199 N.C. App. at 510; *see also Gro-Mar Pub. Rels., Inc. v. Billy Jack Enters., Inc.*, 36 N.C. App. 673, 679 (1978) (holding the trial court abused its discretion in denying the plaintiff's motion to amend its complaint after a motion to dismiss where the "trial court failed to state a reason . . . nor do we perceive that there are any 'apparent' reasons for denial of leave to amend"). Additionally, "[t]here is . . . no time limit for amendment under Rule 15." *Watson v. Watson*, 49 N.C. App. 58, 61 (1980). "It is [the p]laintiff's burden to prove the trial court abused its discretion in denying her motion to amend." *Williams*, 199 N.C. App. at 510.

Here, Defendants argued before the trial court that Plaintiff's Second Motion to Amend would cause undue delay and undue prejudice or would be futile. When

ruling on the Second Motion to Amend, the trial court stated:

> All right. You all used very strong words in terms of -- you used strong words. This is a matter to be considered in my discretion. Unfortunately it seems as though there may have been lines of communication that apparently were challenging between the parties, lines of communication, for me being aware of the Order that was out there that had not been addressed yet. So that's my fault for whatever fell through with that.
>
> This is a matter that would be in the Court's discretion in terms of the Motion to Amend. It's easier for me to, I say easy, I can rule on this one somewhat confidently actually from filing -- from ruling on the Motion to Dismiss. The motion is denied. At the time that it was ruled upon previously I actually anticipated that there may have been a voluntary dismissal to go back and redo everything. But you don't have to. You're well within your rights to try to go about it this way.
>
> Before me to hear the Motion to Amend today in my discretion that would be denied. I don't know if or when I will get to the point that I would grant a Motion to Amend the day of trial, the day that a matter's called for trial, but these are not the facts nor the circumstances that would get me to the level of doing so [f]or granting a Motion to Amend.
>
> Again, that is making a -- I understand that there -- and I think the Court can take appropriate consideration of the factors that may go around the events that led up to a trial, whether or not there's been some inability to communicate. But  a lot of the argument of what I heard, in addition to the things that went specifically to the facts, was a suggestion of equity but not equity for the parties, somewhat equity for the parties,  equity or consideration of witnesses but as I referenced before, it was almost as if I should have been keeping a scorecard about tit for tat and who did what and I'm very aware and sensitive to the pressures and the stressors that attorneys face, but it

almost seemed as though I heard more about things going on around the case then I did specifically about what I needed to hear just for this motion.

For the past eight years I've heard a lot of motions to amend so it's not as if this is new. But, no, that motion is denied.

Plaintiff argues Defendants did not show the amendments would cause undue delay or prejudice because, "[i]f Defendants truly were prepared 'to proceed on the issues . . . before' the court on 17 March, . . . they were prepared to try [Plaintiff]'s contract claim" since Defendants' own counterclaim involves a breach of contract for indemnification provisions, nor can Defendants be "surprised" because "[Plaintiff]'s contract claim had been part of the case from the start." We do not discern, however, an abuse of discretion by the trial court in finding Defendants showed undue delay where Plaintiff waited over a year to amend its complaint as to the breach of contract claim, had already moved to amend its complaint for other reasons, and then argued the Second Motion to Amend on the day of trial. *See News & Observer Pub. Co.,* 330 N.C. at 485 ("[The p]laintiffs here moved to amend their complaint three months after obtaining new information from deposition testimony, and three days before the action was scheduled for hearing. Although the trial court did not reach the issue of delay and possible prejudice to [the] defendants, the circumstances would have supported a denial of [the] plaintiffs' motion on those grounds.").

Lastly, Plaintiff also contends the trial court reversibly erred because it misapprehended the law twice. First, Plaintiff claims that, because the trial court

heard the motion "on the day that [the] matter[ was] called for trial" and asked in the hearing whether granting the Second Motion to Amend would "automatically result in the matter being continued[,]" the trial court mistakenly believed granting the motion could only result in a continuance, which is not a valid reason for denial. Second, Plaintiff claims the trial court "mistakenly believed [Plaintiff] could replead its contract claim[.]" This was evidenced by the trial court's statement during the hearing: "At the time that [the motion to dismiss] was ruled upon previously[,] I actually anticipated that there may have been a voluntary dismissal to go back and redo everything. But you don't have to. You're well within your rights to try to go about it this way." Plaintiff contends it could not have repled without Defendants' consent or without an order with a Rule 41(b) saving clause.

Plaintiff's arguments mistake the trial court's question about, and opinion on, how things might have gone for the trial court's subsequent reasoning and application of the law and are thus overruled. Accordingly, we conclude the trial court did not abuse its discretion in denying Plaintiff's Second Motion to Amend. *See Pruett*, 238 N.C. App. at 86.

## IV. <u>Conclusion</u>

Upon careful review, we conclude the trial court erred in dismissing Plaintiff's breach of contract claim as to misrepresentations, where Plaintiff sufficiently pled allegations, but it did not err in dismissing the breach of contract claim as to the indemnification clauses, where Plaintiff insufficiently pled those allegations.

Further, the trial court did not abuse its discretion in denying Plaintiff's Second Motion to Amend for undue delay where Plaintiff waited over a year to move to amend its breach of contract claim, Plaintiff had previously moved to amend its complaint for other reasons, and the motion was being heard on the day trial was supposed to start.

AFFIRMED IN PART; REVERSED AND REMANDED IN PART.

Judges TYSON and GRIFFIN concur.

Report per Rule 30(e).